**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**

| | |
|---|---|
| Blessing Property Group, LLC,<br><br>Plaintiff,<br><br>V.<br><br>Jeffrey R. Grant, Benjamin M. Helms, Qin Meng, Southern Consulting Services, Inc., Golden Eagle Capital Investments, LLC, And Butts 1177, LLC<br><br>Defendants. | Case No. 1:26-CV-03252-SDG |

**AMENDED VERIFIED COMPLAINT FOR GENERAL CIVIL**

Blessing Property Group, LLC, a Georgia limited liability company (hereinafter "BLESSING" or "Plaintiff"), by and through its undersigned counsel, files this Amended Verified Complaint against the above-named Defendants, and shows the Court as follows:

**PARTIES**

1. BLESSING is a Limited Liability Company that is registered to do business in Georgia, with a principal office address at 2505 Eastern Blvd, Montgomery, AL, 36117,

2. Kam Lee is the sole owner and manager of BLESSING, and resides in Georgia. Lee owned and operated a furniture store in Montgomery, Alabama at 2505 Eastern Blvd. during most of the dispute.

3. Defendant GOLDEN EAGLE CAPITAL INVESTMENTS, LLC (hereinafter "GOLDEN EAGLE") is a Limited Liability Company that is registered to do business in Georgia, whose principal office and registered agent are located in Henry County, Georgia. Based on real property documents placed of record in Butts County, the current Managers of GOLDEN EAGLE are Jeffrey R. Grant and Benjamin M. Helms. GOLDEN EAGLE may be served by serving its registered agent, Michelle Y. Saade, at its registered office located at 120 S. Zack Hinton Parkway, McDonough, Henry County, Georgia, 30253.

4. Defendant Southern Consulting Services, Inc. ("SOUTHERN CONSULTING") is a Georgia corporation, whose principal office and registered agent are located in Henry County, Georgia. On information and belief, Jeffery R. Grant is and has been the president and sole shareholder of SOUTHERN CONSULTING. SOUTHERN CONSULTING may be served by serving its registered agent, Michelle Y. Saade, at its registered office located at 120 S. Zack Hinton Parkway, McDonough, Henry County, Georgia, 30253.

5. Defendant BUTTS 1177, LLC is a Georgia corporation located at 120 S Zack Hinton Pkwy., Mcdonough, GA 30253. BUTTS may be served by serving

its registered agent, Michelle Y. Saade, at its registered office located at 120 S. Zack Hinton Parkway, McDonough, Henry County, GA 30253.

6. Qin ("Rose") Meng is a resident of Henry County, Georgia, and may be served at 1378 Brannan Rd. McDonough, GA 30281.

7. Jeffery R. Grant ("Grant") is an individual who is a resident of Henry County, Georgia. He may be served at 104 Hillcrest Drive, Stockbridge, GA, 30281.

8. Benjamin M. Helms ("Helms") is an individual who is a resident of Henry County, Georgia. He may be served at 781 Stagecoach Rd., Stockbridge GA 30281.

9. Non-party, Golden Stone International Investment Co., LLC ("GOLDEN STONE"), is a Georgia Limited Liability Company that is currently in good standing. On information and belief, the sole Manager and Member of GOLDEN STONE is Zhen Wang, who is a Chinese national and a resident of China.

## BACKGROUND INFORMATION

10. "BUTTS 1177" ("BUTTS") is an entity that was formed on or around July 17, 2017 to acquire a certain 1,177.5-acre undeveloped property in Butts County, Georgia ("BUTTS Tract"), described in further detail in a Deed recorded at Book 838, Page 500 of the Butts County Recorder's Records. A true and correct copy of this Deed is attached as Exhibit A.

11. BUTTS was initially created by BLESSING, GOLDEN EAGLE, and non-party GOLDEN STONE, all of which are Members of BUTTS.

12. Prior to forming BUTTS in August 2017, Defendant Meng approached Kam Lee about investing in the BUTTS Tract. Meng represented that the BUTTS Tract could be sold at a significant profit to developers in the area.

13. Before creating BUTTS 1177 in August 2017, Defendant Meng and Defendant Grant approached non-party Zhen Wang, the primary Member of GOLDEN STONE about investing in the BUTTS Tract. Through a series of six emails, sent between 2015 and 2016, the parties communicated with Zhen Wang. In the first of these emails, which sent by Jeff Grant and was received by Zhen Wang on December 17, 2015, Jeff Grant included instructions for a Limited Power Of Attorney to allow Defendant Meng to open a United States bank account for Zhen Wang to hold funds until BUTTS 1177 was created. Meng was copied on this email. In the second email, dated December 18, 2015, Grant emailed Zhen about the need for a certain document to be notarized before a bank would accept it. The third email is dated January 4, 2016 and additionally involves a notarization requirement for a bank account. The fourth email, dated March 24, 2016, was from Jeff Grant to Zhen Wang and was blank, but included an attachment with wiring instructions to Jeff Grant's bank account at Sun Trust Bank in Atlanta, Georgia. The fifth email, dated March 25, 2016, was sent by Jeff Grant to Zhen Wang and was a confirmation that

a sum of $455,000 was successfully wired to Jeff Grant from Zhen Wang. The sixth email, dated March 29, 2016, was sent by Jeff Grant to Zhen Wang and was a confirmation that a sum of $250,000 was successfully wired to Jeff Grant from Zhen Wang. This email communication was all done while Defendant Grant was in Georgia and Zhen Wang was in China. The exchanges were completed in order to fund BUTTS 1177 at the inflated and fraudulent purchase price. Additionally, Zhen Wang was encouraged to make these contributions to BUTTS 1177 on the false promise of future proceeds and profits generated by the LLC. Meng and Grant knew they would not pay Wang any proceeds from the BUTTS 1177 Tract when they solicited and collected the funds from Wang and Lee. These emails are included herein as Exhibit R.

14. Meng is originally a Chinese national who resides in Georgia, and has been named as a Defendant, along with Defendants Jeffrey Grant, Benjamin Helms, GOLDEN, and SOUTHERN CONSULTING in at least two other cases in the Superior Court of Henry County, Georgia based on essentially the same land development scheme perpetrated on Plaintiff. *See Wox Venture, LLC, et. al. v. North Ola Investors, LLC, Golden Eagle Capital Investments, LLC, Jeffery Roy Grant, Southern Consulting Services, Inc., and Qin Meng*, SUCV2024001041. Therein, Plaintiffs brought allegations against several of these same Defendants of a breach of fiduciary duty, conversion and conspiracy to convert, punitive damages,

attorneys' fees, demand for inspection of documents. Plaintiffs allege that Plaintiffs and GOLDEN EAGLE were the Members of North Ola Henry 163, LLC, which was the owner of a real property comprised of 163 acres. In 2018, 47.91 acres were conveyed away to Southern Conservation Trust, Inc., a Georgia non-profit corporation. Subsequently in 2018, North Ola Henry 163, LLC conveyed the remaining acreage to North Ola Investors, LLC for around 2.4 million dollars. None of this income was distributed to Plaintiffs, the Members of North Ola Henry 163, LLC. *See also Echelon Estate LLC, a Georgia limited liability company, Individually and in the right of LOWER WOOLSEY HENRY 780, LLC, v. Jeffrey R. Grant, Qin Meng, Southern Consulting Services, Inc. Southern Property Investment Group, LLC, Golden Eagle Capital Investments, LLC, Golden Eagle Enterprises, Tim Ho Wan, LLC, Andrew Neumann, and Benjamin M. Helms*, SUCV2025002425. Plaintiff in this case brought allegations of a breach of fiduciary duty, conversion, RICO, conspiracy, constructive trust, monies had and received, disregarded corporate veil, disloyal servant, attachment, accounting, recovery of Plaintiff's share of distributions owed to Members, interest on liquidated amount, punitive damages, and receiver. Plaintiff therein alleged that a real property consisting of 454.66 acres was controlled by Defendants and owned by Plaintiff through various entities was sold pursuant to a Purchase Agreement on June 25, 2024. The closing period for this transaction took place between 2024 and 2025. During the closing period, earnest

money of around 1.5 million dollars was tendered as part of the transaction. Plaintiff alleges that this earnest money was wrongfully diverted to Defendants' own bank accounts. Defendants then used this wrongfully diverted money to buy additional shares in the owner entities in order to make them jointly owned by Plaintiff and Defendants and receive a part of the sale proceeds. The property sold for nearly 22 million dollars, and 35% of those proceeds were claimed by Defendants. An additional, approximate 5 million dollars of the 65% remaining proceeds was additionally diverted by Defendants. Further discussion of these state cases is provided below.

15. Essentially, Meng proposed that Lee, along with herself and non-party investor GOLDEN STONE, create a company named after the subject property ("BUTTS 1177"). Meng, serving as the initial manager of BUTTS, would handle the purchase, management, and eventual sale of land. Meng represented that any income generated from the BUTTS Tract, whether through a sale or leasing rights, would be distributed in proportion to the parties' respective shares in the company.

16. Meng represented to Lee that the purchase price of the BUTTs Tract was $3,200,000, and that Lee would need to make an initial capital contribution of $1,300,000 for a 40% interest in the company. Lee agreed to invest in the project, and the formation of BUTTS was memorialized by an Operating Agreement, dated

July 17, 2017. A true and correct copy of this Operating Agreement is attached as Exhibit C.

17. The Operating Agreement specified that the Members were required to make the following contributions in exchange for proportionate Membership interests in BUTTS: GOLDEN STONE INTERNATIONAL INVESTMENT CO., LLC was to contribute $1,320,000 for a 40% share; BLESSING, operated by Lee, was to contribute $1,320,000 for a 40% share; and GOLDEN EAGLE, operated by Meng, was to contribute $660,000 for a 20% share. Id., at Exhibit C.

18. The Operating Agreement also provided that GOLDEN EAGLE, operated by Meng, would serve as Manager for BUTTS. The term for the Manager was indefinite, unless GOLDEN EAGLE resigned or was removed from this role by a majority of the Members.

19. In August 2017, Meng's agent, Xiaofeng Zheng, emailed Lee the Operating Agreement for signature and wire instructions for Lee's initial capital contribution on Meng's instructions. See Exhibit B.

20. Kam Lee and non-party Zhen Wang both executed the Operating Agreement as Managers for BLESSING and GOLDEN STONE, respectively, and paid their initial capital contributions totaling $2,600,000. On information and belief, Meng did not execute the Operating Agreement on behalf of GOLDEN.

21. On information and belief, and based on the email chain included in Exhibit D, the initial contributions to BUTTS made on behalf of BLESSING and GOLDEN STONE were not transferred to BUTTS' bank account, where the members could monitor how Meng, as the designated Manager of the company, was using the funds. On information and belief, Meng, Grant, and/or Helms arranged for the funds to be deposited directly in SOUTHERN CONSULTING's attorney's account until the purchase of the BUTTS Tract. SOUTHERN CONSULTING is owned and operated by Defendant Jeff R. Grant, who has been named as a defendant in several other state lawsuits involving the same pattern of real estate investment fraud, along with Meng, as noted above.

22. Defendants Grant, Meng, and Helms directed non-party GOLDEN STONE's initial capital contribution of $1,300,000 into SOUTHERN CONSULTING's attorney's account by international wire transfer from GOLDEN STONE'S Chinese bank account.

23. On information and belief, and based on the email chain in Exhibit D, GOLDEN EAGLE did not make an initial contribution of $600,000 for a 20% stake in BUTTS, as originally promised by Meng and required under the terms of the Operating Agreement. Instead of making a standard cash contribution, Grant, in an email sent August 17, 2021 to Plaintiff's attorney Lu Wang, made the vague assertion that this 20% share was paid in the form of his completing surveys and

delineations at various, undisclosed points in time, which still remain completely unaccounted for.

24. According to a Warranty Deed, dated August 15, 2017, Defendant Grant, on behalf of BUTTS 1177, purchased the BUTTS Tract for a purported $2.65 million from a Seattle-based timber company named WEYERHAEUSER COMPANY, located at 220 Occidental Ave. S. Seattle, WA 98104. See Exhibit A.

25. Based on tax records available in Butts County, the actual sale of the BUTTS Tract was much less than the purported $3,200,000 price of the land represented by Meng to Plaintiff and GOLDEN STONE at the time of BUTTS' formation. See Exhibit N.

26. The deed from WEYERHAEUSER COMPANY shows that the document was executed in the State of Washington and sent to Grant in Georgia. See Exhibit A. On information and belief, Grant transmitted interstate communications (emails and phone calls) to WEYERHAEUSER's representatives in Washington while negotiating and closing the sale of the BUTTS Tract. Defendants Grant and Meng have exclusive control over the correspondence with WEYERHAEUSER; Grant refused to send Plaintiff's counsel documents pertaining to the sale upon request, noted below. In any event, Grant and Meng mailed the deed to the recorder's office in furtherance of the scheme to defraud the Plaintiff out of her personal property rights.

27. On or around August 17, 2021, Plaintiff's attorney Lu Wang emailed Defendant Meng to request BUTTS' books of business, including copies of all bank statements since 2017: "We need the financial documents to show the investment funds and all the dispersion of the funds to date." Exhibit D.

28. Wang also requested documentation regarding the deposit location of Plaintiff's initial ($1,300,000) capital, along with a fully executed copy of the Operating Agreement and closing documents with WEYERHAEUSER COMPANY for the BUTTS Tract. See Exhibit D. Wang's email to Meng reads, in relevant part:

> As we understand, the Company purchased a piece of land in 2017. We also understand that you are the Initial Manager in charge of the entire operation and management of the Company. In order to serve the legal counsel for Blessing Property Group, LLC, we would appreciate it if you could provide us with the following information and documents about the Company:
>
> - A copy of the executed Operating Agreement in 2017.
> - Copies of Corporation Tax Returns, including Schedules K-1, since the inception of the Company in July 2017.
> - Copies of all the Bank Statements of the Company's business accounts since the inception of the company in July 2017.
> - A copy of the Company's corporate ledger.
> - A complete copy of the Closing documents of the land purchase by the company.

Id., Wang email to Meng, dated September 2021.

29. Meng, responding from China, diverted Wang to Grant: "I am in China I already talked to Jeff [Grant], he said he is going to send to you. Could you please call bill lee his number is 8178911308 he is the co-manager with Jeff his email is Wlee003@gmail.com. Rose Meng." Id.

30. Grant informed Plaintiff's attorney that the investment funds were sent to SOUTHERN CONSULTING's attorney's escrow account. Grant refused to provide the requested financial information and fully executed Operating Agreement. Id. Further, Grant impliedly admitted that Meng, as the initial manager of GOLDEN, did not make the promised initial capital contribution of $600,000, but claimed that he paid other various expenses at different points in time to close the sale on the BUTTS Tract with WEYERHAEUSER COMPANY. Id. Grant knew this statement was false; he never provided any documentation to support his claim that he contributed $600,000, as required under the Operating Agreement.

31. The Butts County property records indicate that on June 29, 2022, a Limited Warranty Deed Of Contribution, recorded at Book 00973, Page 00753, was executed from BUTTS 1177, LLC to BUTTS 300, LLC for a portion of the two parcels, consisting of 300.41 acres and listed in an attached plat. This document was executed by Jeff R. Grant and Benjamin M. Helms, as Managers for GOLDEN. Plaintiff was not notified of this transaction by any of the Defendants. A copy of this document is attached as Exhibit E.

32. The Butts County property records indicate that on May 22, 2023, a Warranty Deed, recorded at Book 00992, Page 0152, was executed from BUTTS 300, LLC to BUTTS 1177, LLC for a portion of the two parcels, consisting of 300.41 acres and listed in an attached plat. This document was executed by Jeff R. Grant

and Benjamin M. Helms, as Managers for GOLDEN. Additionally, BUTTS 1177, LLC appears in the signature page as a "Member" of BUTTS 300, LLC. Plaintiff was not notified of this transaction by any of the Defendants. A copy of this document is attached as Exhibit F.

33. The Butts County property records indicate that on May 22, 2023, a Security Deed, recorded at Book 00992, Page 0157, was executed from BUTTS 1177, LLC, as Borrower, and JDS Holdings, LLC and William Stacey Britt, as Lenders of $2,350,000, due on May 22, 2024, covering the entire BUTTS Tract. See Exhibit G. This document was executed by Jeff R. Grant and Benjamin M. Helms, as Managers for GOLDEN. Additionally, Jeff R. Grant executed the document as Manager for SOUTHERN CONSULTING. See Exhibit G.

34. In the Security Deed, Grant and Helms also represented SOUTHERN CONSULTING as a "member" of BUTTS 1177, LLC. No release of this document was found. Plaintiff was not notified of this transaction by any of the Defendants. Id.

IN WITNESS WHEREOF, Borrower has signed and sealed this Security Instrument.

Signed, Sealed and delivered in the presence of:

**Butts 1177, LLC** -Borrower

**By: Southern Consulting Services, Inc., Member**

By: ______________________ **(Seal)**
Jeff R. Grant, Its Manager

______________________
**Unofficial Witness**

______________________
**Notary Public**

ALLEN L. LACEY JR. NOTARY PUBLIC GEORGIA EXPIRES July 24, 2024 JACKSON COUNTY

**By: Golden Eagle Capital Investments, LLC, Member**

By: ______________________ **(Seal)**
Jeff R. Grant, Its Manager and Individually

By: ______________________ **(Seal)**
Benjamin M. Helms, Its Manager and Individually

[Space Below This Line For Acknowledgement]

35. Under the express terms of the Operating Agreement, "a person may be admitted as an additional Member only upon the written consent of all Members." See Exhibit C.

36. Neither Plaintiff nor GOLDEN STONE consented to making SOUTHERN CONSULTING a member of BUTTS. Plaintiff was stripped of her absolute right to choose her business partners and forced to share corporate governance with a hostile, fraudulent entity. The Defendants did not merely alter a corporate ledger; they executed a targeted fraud that directly degraded the Plaintiff's individual contractual rights. By unilaterally forcing Southern Consulting into the LLC, Defendants directly harmed the Plaintiff by diminishing their governance and voting control, clouding the title of the land supporting their 40% equity stake with

unauthorized mortgages, and creating a fraudulent vehicle used to divert the sale proceeds that otherwise belonged to the legitimate members.

37. Defendants Grant, Helms, and Meng knowingly and intentionally executed a scheme to defraud the Plaintiff by executing a Security Deed that falsely and fraudulently represented SOUTHERN CONSULTING as a member of BUTTS. To advance and complete this fraudulent scheme, Defendants knowingly caused this materially false Security Deed to be deposited in the U.S. mail for delivery and recording at the County Recorder's Office, thereby committing a distinct predicate act of mail fraud under 18 U.S.C. § 1341.

38. The Operating Agreement provides that BUTTS may not incur any debt or liability without each Member's written consent. Id. Neither Plaintiff or GOLDEN STONE authorized Grant to take a $2,350,000 mortgage on the BUTTS Tract on behalf of the company. Id.

39. On information and belief, the $2,350,000 received from JDS Holdings, LLC was deposited into SOUTHERN CONSULTING's bank account at the direction of Meng, Helms, and/or Grant.

40. The Butts County property records indicate that on July 7, 2023, a Deed To Secure Debt And Security Agreement, recorded at Book 00995, Page 00530, was executed from BUTTS 1177, LLC, as Borrower, and JDS Holdings, LLC, as Lender of $1,800,000 due on July 21, 2023, covering the entire property in Butts County.

This document was executed by Jeffery R. Grant, as Manager for BUTTS 1177, LLC. No release of this document was found. Plaintiff was not notified of this transaction by any of the Defendants. Exhibit H.

41. The Operating Agreement provides that managers may only be added through amendment, which requires the written consent of all the existing Members. Exhibit C, Operating Agreement, ¶¶ 4.2, 9.1. Neither Plaintiff or GOLDEN STONE provided written consent to make Jeff Grant a manager of BUTTS 1177.

42. To advance and complete this fraudulent scheme, Defendants knowingly caused this materially false Security Deed – Grant was never appointed as Manager of BUTTS 1177—to be deposited in the U.S. mail for delivery and recording at the County Recorder's Office, thereby committing a distinct predicate act of mail fraud under 18 U.S.C. § 1341.

43. The Butts County property records indicate that on May 21, 2024, an Assignment Of Deed To Secure Debt, recorded at Book 01011, Page 0327, was executed from William Stacey Britt, as Assignor, and JDS Holdings, LLC, as Assignee, of all of its rights, title, and interest in the document at Book 00992, Page 0157. Plaintiff was not notified of this transaction by any of the Defendants. A copy of this document is attached as Exhibit I.

44. The Butts County property records indicate that on June 4, 2024, a Modification Agreement, recorded at Book 01011, Page 00918, was executed from

BUTTS, as Grantor, and JDS Holdings, LLC, as Grantee, modifying the terms set out in the Mortgage document at Book 00992, Page 0157. Specifically, the maturity date of said document was extended until July 19, 2024. This document was executed by Jeff R. Grant and Benjamin M. Helms, as Managers for GOLDEN. Exhibit J.

45. In the Modification Agreement, Grant and Helms again represented in the Modification Agreement that SOUTHERN CONSULTING was a "member" of BUTTS 1177, with Grant as a "manager" of SOUTHERN CONSULTING. Plaintiff was not notified of this transaction by any of the Defendants. A copy of this document is attached as Exhibit J. To advance and complete this fraudulent scheme, Defendants knowingly caused this materially false Modification Agreement to be deposited in the U.S. mail for delivery and recording at the County Recorder's Office, thereby committing a distinct predicate act of mail fraud under 18 U.S.C. § 1341.

46. The Butts County property records indicate that on September 17, 2024, a Security Deed, recorded at Book 01017, Page 0264, was executed from BUTTS, as Borrower, and JDS Holdings, LLC, as Lender, for a loan of $2,355,000, due on September 17, 2025. This document covers the entire property in Butts County. This document was executed by Jeff R. Grant and Benjamin M. Helms, as Managers for GOLDEN. Again, Grant and Helms falsely represented SOUTHERN

CONSULTING as a "member" of BUTTS 1177. No release or satisfaction of this document was found of record. Plaintiff was not notified of this transaction by any of the Defendants. A copy of this document, which Grant and Helms also caused to be sent to the county recorder's office by mail, is attached in Exhibit K.

47. Despite the property presumably remaining undeveloped and unleased, BLESSING received a K-1 form for the 2024 tax year which showed significant profits earned by BUTTS. Said document was received from an unnamed party at SOUTHERN CONSULTING's address. No explanation for these profits or the deductions included in this document was offered. A copy of this form is attached in Exhibit M.

48. Based on a ledger for BUTTS 1177 included herein as Exhibit Q Defendants have executed timber leases on the BUTTS Tract without Plaintiff's knowledge or consent in 2019 and 2020, and, on information and belief, on other unidentified years as well. Additionally, the ledger shows that previously undisclosed hunting leases were executed in 2020 through 2022. Defendants' counsel sent the ledger to Plaintiff's counsel on ____, after Plaintiff filed the original complaint, as discussed further below.

49. Defendant Grant has extensive experience in the timber industry, the BUTTS Tract was acquired from WEYERHAUSER, a timber company, and the referenced K-1 form for the 2024 tax year indicates the BUTTS Tract generated

income on at least one other year. To date, neither Plaintiff or GOLDEN STONE have received any income generated from the timber leases.

50. The Butts County property records lastly indicate that on May 15, 2025, a Limited Warranty Deed, recorded at Book 1031, Page 0723, was executed from BUTTS, as Grantor, to WILLIAM T. MYLES, SR. FAMILY, L.L.L.P., as Grantee, wherein all the interest in the BUTTS Tract was conveyed away in exchange for $6,455,570. This document was executed by Jeff R. Grant, as Manager for SOUTHERN CONSULTING, as a member of BUTTS. Plaintiff was not notified of this transaction by any of the Defendants. A copy of the Limited Warranty Deed is attached in Exhibit L, and the Butts' County Tax Assessor's confirmation of the sales price is available in Exhibit N.

51. Grant, Meng, and Helms caused the fraudulent Limited Warranty Deed to be deposited in the U.S. mail for delivery and recording at the County Recorder's Office, thereby committing a distinct predicate act of mail fraud under 18 U.S.C. § 1341.

52. As of the filing of this lawsuit, no part of the $6,455,570 has been distributed to Plaintiff. Upon information and belief, the funds from the sale were deposited into SOUTHERN CONSULTING's bank account, and then distributed to Grant, Meng, and Helms for their personal gain.

53. Accordingly, prior to forming BUTTS 1177 in August 2017, Meng falsely represented to Plaintiff and Zhen Wang of GOLDEN STONE that the purchase price of the land was $3,200,000 and that Plaintiff, along with GOLDEN STONE, would need to make an initial contribution of $1,300,000. Meng stated that she would cover the balance of $600,000 to acquire the property.

54. However, Meng falsely inflated the value of the land to Lee. Meng, working with Jeff Grant and Helms, knew the actual purchase price of the land was less than the solicited amounts listed in the Operating Agreement Capitalization Table. Meng, Grant, and Helms never notified Plaintiff or non-party GOLDEN STONE of the actual purchase price.

55. Meng, Grant, and Helms did not intend to make an initial contribution towards the land purchase, and ultimately never did so, but nevertheless wanted a 20% stake in the company—and ultimately converted all income generated from the BUTTS Tract for their personal gain and to the detriment of Plaintiff. This was admitted by Grant directly in Exhibit D, when he made the vague assertion that this 20% share was paid in the form of his completing surveys and delineations at various, undisclosed points in time, which still remain completely unaccounted for. To date, Grant has still failed to provide any documentation to support his claim that he or Meng made the required $600,000 contribution.

56. After executing the land sale with the Seattle-based WEYERHAEUSER COMPANY, and sharing correspondence across state lines to complete the transaction in furtherance of the fraudulent scheme—information exclusively in the possession of Grant, Meng, and Helms—Grant proceeded to take out at least two mortgages on the BUTTS Tract without Plaintiff's or GOLDEN STONE's knowledge or consent, in clear violation of the Operating Agreement. To secure the mortgages, worth over $2 million, Grant and Helms knowingly misrepresented in the May 2023 and September 2024 Security Deeds with JDS Holdings, LLC that SOUTHERN CONSULTING was a member of BUTTS. Grant, Helms, and Meng caused the fraudulent mortgage deed to be deposited in the U.S. mail to be filed in the county recorder's office.

57. On information and belief, Grant and Helms directed JDS Holdings, LLC to send the funds to SOUTHERN CONSULTING's corporate bank account to finance Defendants' continuing land development scheme against Plaintiff and other investors, some of whom have filed lawsuits against Defendants in Georgia state court. This banking information is in the exclusive control of Grant, Helms, and Meng.

58. In September 2021, Plaintiff's attorney requested BUTTS's financial information from Meng, including bank statements going back to 2017. To conceal Defendants' financial activity, specifically the actual purchase price of the BUTTS

Tract from WEYERHAEUSER, Meng, traveling in China at the time, passed off Plaintiff's attorney to Grant, who refused to provide the requested financial information or the fully executed Operating Agreement.

59. Grant, Meng, and Helms executed timber leases on the BUTTS Tract. They did not distribute the income generated from the leases with Plaintiff or GOLDEN STONE in violation of the Operating Agreement.

60. In a desperate attempt to avoid this lawsuit, Defendants, through counsel, provided Plaintiff with a ledger for BUTTS 1177 (attached as Exhibit Q). This ledger summarizes the amount Defendants claim is owed to Plaintiff based on their own records, but it ultimately bolsters Plaintiff's prior allegations made in the initial complaint. While the ledger confirms that Defendants entered into Timber and Hunting Leases on the BUTTS Tract from 2020 through 2022 without notifying Plaintiff, distributing proceeds, or issuing tax documentation, it raises critical questions about what was omitted. Specifically, a 2024 K-1 form sent to Plaintiff—combined with information and belief—indicates that additional years of earned income remain unaccounted for.

61. Specifically, Plaintiff received a K-1 form for tax year 2024 stating that $105,197 in revenue was generated from the BUTTS Tract, and simultaneously and unexplainably completely deducted therefrom. However, the ledger, submitted to

Plaintiff's counsel **after** the initial complaint was filed, falsely claims that the BUTTS Tract did not earn any income in 2024.

BUTTS 1177, LLC

| Tax Year | Timber Proceeds | Hunting Lease | Land Sale Proceeds | TOTAL |
|---|---|---|---|---|
| 2017 | - | - | - | - |
| 2018 | - | - | - | - |
| 2019 | 204,267.00 | - | - | 204,267.00 |
| 2020 | 262,983.00 | 14,124.00 | - | 277,107.00 |
| 2021 | - | 14,124.00 | - | 14,124.00 |
| 2022 | - | 14,124.00 | - | 14,124.00 |
| 2023 | - | - | - | - |
| 2024 | - | - | - | - |
| 2025 | - | - | 6,455,570.00 | 6,455,570.00 |
| | 467,250.00 | 42,372.00 | 6,455,570.00 | $ 6,965,192.00 |

| | |
|---|---|
| Total Proceeds | $ 6,965,192.00 |
| Cost Basis: Timber | $ (210,000.00) |
| Cost Basis: Land | $ (3,090,000.00) |
| Commission: Walker & Associates | (400,000.00) |
| Closing costs | (14,419.57) |
| Property Tax | (1,368.39) |
| Project Expenses - Golden Eagle | (115,084.50) |
| Project Expenses - Southern Consulting | (71,228.38) |
| Hunting lease management fee | (42,372.00) |
| Bank Fees | (65.00) |
| Net Income | 3,020,654.16 |

| | |
|---|---|
| Net Income | 3,020,654.16 |
| Cost Basis | $ 3,300,000.00 |
| To be Distributed: | $ 6,320,654.16 |

| | | |
|---|---|---|
| $ 2,528,261.66 | 40% | Blessing Property Group, LLC |
| $ 2,528,261.66 | 40% | Golden Stone International Inv Co, LLC |
| $ 632,065.42 | 10% | Golden Eagle Enterprises |
| $ 632,065.42 | 10% | Southern Consulting Services, Inc. |

Approved by:

Golden Stone International Investment Co., LLC

Zhen Wang

By: Zhen Wang

Exhibit Q, Ledger submitted to Plaintiff's counsel on August 24, 2026.

62. As shown above, the ledger claims no income in 2024, which is false. Plaintiff received a K1 form for tax year 2024 showing $105,197 in earnings, which were never distributed to Plaintiff or GOLDEN STONE. Grant, through his counsel, caused the false ledger to be transmitted across state lines to Plaintiff's counsel Pete Wolfgram, who resides in Wisconsin, and Xiyan Zhang, a Philadelphia resident.

Grant falsely represented zero income in 2024 to Plaintiff and GOLDEN STONE to avoid paying the distribution in furtherance of the fraudulent scheme.

63. Further, the ledger reflects that Southern Consulting Services claims a 10% membership interest in BUTTS 1177. This perpetuates the fraudulent pattern established in the May 2023 and September 2024 Security Deeds, where Grant similarly falsified the company's membership status. The ledger confirms that SOUTHERN CONSULTING was unilaterally added as a member and received distributions without Plaintiff's or GOLDEN STONE's consent.

64. The ledger also shows $262,983 in timber proceeds for tax year 2020. The total revenue from the timber for tax years 2019 and 2020 is $467,250. The ledger reflects a cost-basis deduction of $210,000, leaving $257,250 in distributable timber income from 2019-2020. Neither Plaintiff or GOLDEN STONE received a distribution for the timber proceeds. In fact, Plaintiff's Schedule K-1 for tax year 2020, received from Defendants, does not reflect any positive revenue greater than $10,000 – which is contradicted by the ledger submitted after Plaintiff filed the initial complaint.

65. Furthermore, the ledger contains multiple unjustified, undefined deductions, including a "Cost Basis: Timber," ambiguous "Project Expenses" for GOLDEN and SOUTHERN CONSULTING, and "Hunting Lease Management Fees" paid to an unidentified party that suspiciously equal the exact total value of

the Hunting Leases. The ledger also lists a $400,000 commission paid to an unknown party, "Walker & Associates." Defendants have not provided any documentation to substantiate this commission fee.

66. When Plaintiff's counsel demanded a financial accounting regarding the Defendants' required $600,000 LLC capital contribution, Defendants actively and fraudulently concealed their default and the ongoing racketeering enterprise by fabricating explicit, deceptive offsets. Specifically, Defendants affirmatively represented that they had paid a $400,000 commission to an entity named Walker and Associates, and further claimed that the remaining balance was satisfied through undocumented 'surveys and delineations' allegedly performed by Defendant at unspecified times. Defendants refused to provide any supporting documentation for these assertions. Plaintiff is informed and believes, and thereupon alleges, that the $400,000 commission to Walker and Associates was entirely fictitious, unauthorized, or constituted an illegal kickback scheme, and that the claimed surveying services were a vague pretext to mask Defendants' failure to contribute capital. Plaintiff reasonably relied on these material fiduciary misrepresentations at the time, which actively prevented Plaintiff from discovering the conversion of LLC assets until the subsequent 2023–2025 deed frauds and the recent submission of a falsified litigation ledger.

67. On information and belief, Defendants failed to provide Plaintiff with an accurate K-1 form for every year since 2017 through present for any profits or losses attributed to Plaintiff's share of BUTTS 1177. Federal tax law states that Managers of an active multi-member LLC are required to file a tax return and issue a K-1 to every Member every year. Based on the existence of the ledger, Defendants actively and intentionally hid true and correct K-1 forms from Plaintiff to prevent it from seeing how they were moving, spending, or diverting BUTTS 1177's profits.

68. More specifically, the ledger shows "timber proceeds" in 2019 and 2020 of $204,267 and $262,983, respectively. The ledger also claims "hunting lease" revenue of $14,124 each year for years 2020-2022.

69. However, the K-1 form submitted to Plaintiff for tax year 2020 does not reflect the timber proceeds, of which Plaintiff should have received a distribution. See Exhibit S. Defendants thus knowingly withheld the timber revenue from Plaintiff, and omitted the same from the federal government in federal tax filings, which were transmitted over state lines.

70. In May 2025, Grant sold the property to WILLIAM T. MYLES, SR. FAMILY, L.L.L.P for $6,455,570. Grant executed the Warranty Deed "as Manager for SOUTHERN CONSULTING" on behalf of BUTTS 1177, thus again falsely representing that SOUTHERN CONSULTING is a member of BUTTS 1177, an act

of deed fraud. SOUTHERN CONSULTING owned no part of BUTTS 1177, and did not have authority to execute a deed on behalf of the company.

71. To close a $6,455,570 transaction, a title underwriter WILLIAM T. MYLES, SR. FAMILY, L.L.L.P's attorney is required to perform baseline due diligence. This includes demanding a copy of the seller LLC's Operating Agreement, an active Articles of Organization check, and a Corporate Resolution/Consent Form authorizing the sale.

72. If the buyer or their title company had requested the operating agreement for BUTTS 1177, they would have instantly discovered that Southern Consulting was never an authorized manager or member, and that Grant lacked the corporate power to sell the land. Aside from falsely stating Southern Consulting Services, LLC's membership status in the 2025 Warranty Deed, Grant, Meng, and Helms, on information and belief, made other false representations to the WILLIAM T. MYLES, SR. FAMILY, L.L.L.P's attorney that he had the corporate power to sell the land.

73. Moreover, said Warranty Deed was mis-indexed, so it did not appear as a recorded document against the BUTTS Tract at the time that the documents were reviewed. It was only located recently in a much more extensive search of the County Recorder's records. On information and belief, Grant directed all proceeds from the land sale to SOUTHERN CONSULTING's bank account—which is

corroborated by the fact that Southern Consulting Services is falsely listed as a manager and member of BUTTS 1177. Defendants never informed Plaintiff of the sale, and, as of the date of this filing, Plaintiff has not received any funds from the sale. On information and belief, Grant, Meng, and Helms distributed the proceeds among themselves for their personal gain.

74. The fiscal year 2025 tax extended deadline will pass on September 15, 2026 for the BUTTS 1177 asset sale that closed in May 2025. The tax year has thus nearly concluded, and BUTTS 1177 should have already calculated the profits from the sale to report them to the IRS. Plaintiff is soon to be legally liable to pay personal income tax on a real estate gain despite having received no cash to pay it, while Defendants hold all liquidity of the sale to their sole benefit.

75. In *Thomas v. Dickson*, 250 Ga. 772, the Georgia Supreme Court established that a minority shareholder in a closely held company may maintain a direct action that includes derivative claims against the managing shareholders rather than being restricted to a shareholder derivative suit. This flexible approach looked to four realistic objectives of a case to determine if a direct action was warranted. These reasons for the general rule of requiring a derivative action are recited as follows: 1.) it prevents a multiplicity of lawsuits by shareholders; 2.) it protects corporate creditors by putting the proceeds of the recovery back in the corporation; 3.) it protects the interests of all shareholders by increasing the value of their shares,

instead of allowing a recovery by one shareholder to prejudice the rights of others not a party to the suit; and 4.) it adequately compensates the injured shareholder by increasing the value of his shares. Id. at 774. If these objectives are not served or fulfilled by a derivative case, a direct action may be permitted. In the instant case, there is a low risk of a multiplicity of liabilities. The only other Member of BUTTS 1177 is GOLDEN STONE, who is a passive Member of the entity. The only known Member of GOLDEN STONE additionally resides outside of the United States. There is thus a low risk of a competing, parallel lawsuit against BUTTS 1177. Moreover, Plaintiff is unaware of any active, corporate creditors, beyond what was discovered in the recorded documents. Lastly, in relation to elements 3 and 4, this is a closely held LLC, which has no available resale market for its shares.

76. In addition to the direct action versus derivative action analysis above, there is a unique and inherent risk in placing any compensation due to Plaintiff back in the corporate accounts of BUTTS 1177, as those accounts are compromised and have been flagrantly mismanaged and misused for the personal benefit of Defendants. Moreover, in CIVIL ACTION NO. SUCV2025002425 in the Henry County Superior Court, Defendant Grant unilaterally attempted to dismiss a derivative lawsuit against Defendants with prejudice filed by a Plaintiff. In said lawsuit, Grant was the Manager of Plaintiff LLC, whereas the party that initiated the lawsuit was a Member of the same Plaintiff LLC. Grant unilaterally attempted to use

his managerial power to dismiss a lawsuit against himself on behalf of the LLC. Plaintiff in that case was forced to file an Emergency Motion To Strike the Voluntary Dismissal in order to protect the case. This flagrant abuse of corporate formalities and fiduciary duties on Grant's part renders a derivative lawsuit in the instant case counterproductive and moot. The Voluntary Dismissal With Prejudice is included herein as Exhibit O, and Plaintiff's Brief In Support Of Its Emergency Motion To Strike Defendant's Pleading is included as Exhibit P.

**COUNT ONE – Federal Civil RICO, 18 U.S.C. 3 1962(c)**
**(Against All Defendants)**

77. Plaintiff realleges and reaffirms paragraphs 1 through 76.

78. The actions of Defendants constitute a breach of the Federal Racketeering and Corrupt Organizations Act ("RICO").

79. Meng, Grant, Helms, GOLDEN EAGLE, and SOUTHERN CONSULTING are each "enterprises" within the meaning of 18 U.S.C. § 1961(4).

80. Meng, Grant, and Helms are additionally "persons" within the meaning of 18 U.S.C. § 1961(3).

81. Defendants have formed an association-in-fact for the common and continuing purpose of receiving illicit gains from fraud perpetrated against unsophisticated and foreign real estate investors. Defendants have worked in close coordination in furtherance of obtaining illicit gains through a continuing pattern of racketeering activity since at least 2017. The members of the enterprise functioned

as a continuing unit with an ascertainable structure separate and distinct from that of the conduct of the pattern of racketeering activity. This association-in-fact thus constitutes an enterprise within the meaning of 18 U.S.C. 3 1961(4). There may also be other members of the enterprise who are unknown at this time. Certain, granular details of the fraud perpetuated by Defendants are uniquely supported by documentation within their own exclusive custody and control, such as the correspondence with WEYERHAUSER and federal tax filings submitted to IRS by Grant. Thus, Plaintiff pleads on information and belief, coupled with the limited facts and documentation in its possession, as to several, specific details herein.

82. As explained above, Meng's role in the operation, as initial manager of GOLDEN EAGLE, was to solicit wealthy investors from Georgia's Asian community to invest in the land development scheme. To this end, around August 2017, Meng falsely represented to Lee that the purchase price of the BUTTS Tract was $3,200,000, and that she, as the manager of GOLDEN, would make an initial capital contribution of $600,000 for a 20% stake in BUTTS. Meng proposed that the company be named after the subject property (BUTTS 1177), a common trait demonstrated in at least two other state cases filed against Defendants Meng, Grant, Helms, SOUTHERN CONSULTING, and GOLDEN EAGLE.

83. Meng and Grant exchanged a series interstate electronic communications (emails) between 2015 and 2016 with Zhen Wang, the primary

Member of GOLDEN STONE. This exchange was made to solicit and receive initial funding for BUTTS 1177 in furtherance of the fraudulent scheme. See Exhibit R. Zhen Wang was residing in China at the time of these email exchanges, and Grant was located in Georgia during this period.

84. Meng transmitted interstate electronic communications (emails) with Lee around August 2017 to solicit funds and create the BUTTS 1177 entity based on the falsely inflated land purchase. See Exhibit B. Lee owned and operated a furniture store in Montgomery, Alabama in 2017 when she corresponded with Meng or Meng's direct agent, Xiaofeng Zheng, to execute the Operating Agreement and wire her initial capital contribution of $1,300,000.

85. Meng knew from information received from Grant and Helms that the actual purchase price of the land was much less than the solicited amount. At this time, Meng, Grant, and Helms never intended to make an initial capital contribution for the BUTTS Tract, disclose the actual purchase price of the land to Plaintiff or GOLDEN STONE, return the balance of funds to Plaintiff, or distribute any funds generated from the BUTTS Tract to Plaintiff or non-party GOLDEN STONE.

86. Meng, Helms, and Grant placed Plaintiff's and non-party GOLDEN STONE's initial capital contribution of $2,600,000 in SOUTHERN CONSULTING's attorney's bank account, not in BUTTS 1177's account. By doing

so, Defendants prevented Plaintiff from accessing the funds or detecting Defendants' illicit financial activity.

87. Meng and Grant received non-party GOLDEN STONE's initial capital contribution of $1,300,000 from GOLDEN STONE's Chinese bank account into SOUTHERN CONSULTING's attorney's escrow account around August 2017, when BUTTS 1177 was formed.

88. After the formation of BUTTS, Grant and Helms purchased the land from WEYERHAEUSER COMPANY, purportedly on behalf of BUTTS 1177, to execute the fraudulent scheme. On information and belief, Grant transmitted interstate electronic communications to negotiate and close the sale with Seattle-based WEYERHAEUSER COMPANY. This information is exclusively in the control and possession of Grant.

89. On or around August 17, 2021, Plaintiff's attorney contacted Defendant Meng requesting a full accounting of BUTTS 1177's books of business, including banking records from 2017. Meng responded, "I am in China I already talked to Jeff [Grant], he said he is going to send to you. Could you please call bill lee his number is 8178911308 he is the co-manager with Jeff his email is Wlee003@gmail.com. Rose Meng." Exhibit D.

90. Accordingly, Meng, while in China, transmitted international wire communications with Grant to further the fraudulent land scheme (i.e., to conceal

Defendants' financial activity, particularly with respect to the actual purchase of the BUTTS Tract.) Meng also transmitted international wire communications to Plaintiff's attorney to conceal the fraudulent activity (i.e., passing off Plaintiff's attorney to Grant, who himself refused to provide the requested financial statements of BUTTS 1177.)

91. Further, in May 2023 and September 2024, Grant and Helms falsely represented SOUTHERN CONSULTING as a member of BUTTS in mortgage documents to secure over $2 million from JDS Holdings without Plaintiff's knowledge or consent, and in violation of the Operating Agreement. On information and belief, the funds were sent to SOUTHERN CONSULTING's bank account, and used to advance the land development scheme against Plaintiff and other investors from Georgia's Asian community. Upon information and belief, the exact transmission logs, postal receipts, and delivery tracking records are within the exclusive possession and control of the Defendants. Plaintiff alleges that on or about May 2023 and September 2024, Defendants knowingly mailed or caused to be mailed via the U.S. Postal Service (or a commercial interstate carrier), or alternatively, knowingly transmitted or caused to be transmitted via interstate wire through the Georgia Superior Court Clerks' Cooperative Authority (GSCCCA) eFiling portal, the materially false and fraudulent mortgage deeds to the County Recorder's Office. Defendants did so with the specific intent to advance their

fraudulent scheme, thereby constituting a predicate act of mail fraud under 18 U.S.C. § 1341, or alternatively, wire fraud under 18 U.S.C. § 1343.

92. After Plaintiff filed its initial complaint, Grant continued this pattern of fraud by sending, through his counsel, the ledger which named Southern Consulting as member with a 10% membership interest. Grant sent the fraudulent ledger across state lines to Plaintiff's counsel, both of whom reside outside Georgia, to avoid a lawsuit and conceal the fraudulent conduct. The ledger falsely omits the income generated on the BUTTS 1177 tract in 2024, as confirmed in Plaintiff's Schedule K-4 from that year.

93. In May 2025, Grant sold the property to WILLIAM T. MYLES, SR. FAMILY, L.L.L.P for $6,455,570. Grant executed the Warranty Deed "as Manager for SOUTHERN CONSULTING" on behalf of BUTTS, thus again falsely representing that SOUTHERN CONSULTING is a member of BUTTS in a property deed. On information and belief, the proceeds from the sale were sent to SOUTHERN CONSULTING's bank account—as evidenced by the deed's listing SOUTHERN CONSULTING as a member and manager of BUTTS 1177and then distributed to Helms, Meng, and Grant for their personal gain and to the detriment of Plaintiff. While this information is within the exclusive control of Defendants. This is corroborated by the ledger, which falsely claims Southern Consulting as holding a 10% interest in BUTTS 1177. Plaintiff alleges that on or about May 2025,

Defendants knowingly mailed or caused to be mailed via the U.S. Postal Service (or a commercial interstate carrier), or alternatively, knowingly transmitted or caused to be transmitted via interstate wire through the Georgia Superior Court Clerks' Cooperative Authority (GSCCCA) eFiling portal, the materially false and fraudulent Warranty Deed to the County Recorder's Office. Defendants did so with the specific intent to advance their fraudulent scheme, thereby constituting a predicate act of mail fraud under 18 U.S.C. § 1341, or alternatively, wire fraud under 18 U.S.C. § 1343.

94. Defendants never notified Plaintiff of the land sale, or distributed any proceeds of the sale to Plaintiff or GOLDEN STONE as of the date of this filing.

95. Between August 2017 and May 2025, Defendants executed timber leases for multiple years on the BUTTS Tract without Plaintiff's knowledge, and intentionally withheld income generated from said leases. See Exhibit Q. As noted above, Grant refused to provide an accounting of BUTTS's financial activity to Plaintiff's attorney, and Plaintiff received a K-1 tax form for the year 2024 indicating that significant income was generated from the BUTTS Tract—which is directly contradicted by the ledger issued by Defendants' counsel after Plaintiff filed the initial complaint.

96. Between August 2017 and May 2025, BUTTS 1177 had generated a significant profit. Said profits appear to be completely extinguished through undiscernible deductions. However, as seen in the ledger included in Exhibit Q, it

appears that profits were generated on the BUTTS Tract for multiple years. Not displaying this information in K-1 forms is in direct contravention of Federal tax law. The Manager of BUTTS 1177 should have filed a tax return and issued an accurate K-1 to each Member of the entity every year. On information and belief, Defendants' tax misconduct is the result of a coordinated effort to prevent Plaintiff and GOLDEN STONE from reviewing the true profits and losses of BUTTS 1177. On information and belief, said profits of BUTTS 1177 have been converted to Defendants by way of this scheme. Further, on information and belief and based on Exhibit Q, BUTTS 1177 did generate profits for some or all the years between 2017 and 2025. In order to avoid showing these profits to Plaintiff or GOLDEN STONE via accurate K-1 forms, Defendants claimed the profits as their own to the IRS. Defendants thus sent false tax information about the entity's financials via the internet or mail to the IRS to facilitate their scheme.

97. Accordingly, Meng, Grant, and Helms used interstate and international wire communications at least to:

a. Inflate the purchase price of the BUTTS Tract to Plaintiff and GOLDEN STONE at $3,200,000 between December 2015 and March of 2016, as to GOLDEN STONE, and around August 2017, as to Plaintiff, prior to forming BUTTS through emails, instant messages, and phone calls;

b. Request that Plaintiff, who was operating her furniture store in Montgomery, Alabama at the time, execute the Operating Agreement and send the $1,300,000 in furtherance of the fraudulent scheme;

c. Receive international wire transfers of money from GOLDEN STONE's Chinese bank account between December 2015 and March of 2016 obtained through such fraudulent representations;

d. Transmit numerous interstate correspondence with Seattle-based WEYERHAEUSER COMPANY to negotiate and close on the BUTTS Tract at a reduced price in furtherance of the fraudulent activity;

e. Transmit interstate wire transfers of money to WEYERHAEUSER COMPANY for the property in furtherance of the fraudulent scheme;

f. Conceal the illicit financial activity of SOUTHERN CONSULTING AND GOLDEN EAGLE from Plaintiff's attorney Lu Wang in 2021 (Meng sent emails to both Lu and Grant while traveling in China in September 2021);

g. Send fraudulent or doctored tax information about BUTTS 1177's financials and converted profits via the internet or mail to the IRS every year from 2017 through 2025 in furtherance of their scheme;

h. Conduct multiple similar schemes against other victims upon information and based on the cases against Meng, Helms, Grant, SOUTHERN CONSULTING, and GOLDEN EAGLE filed in the Superior Court of Henry County, Georgia.

i. Use the mail via the United States Postal Service on three separate occasions in May 2023, September 2024, and May 2025 to send and record the two fraudulent Mortgages and a Warranty Deed in the Butts County Recorder's Office in furtherance of their scheme involving the BUTTS Tract. Each of these documents contains the false assertion that SOUTHERN CONSULTING a Member of BUTTS 1177.

j. Transmit across state lines, via email, the false ledger described in detail above. Said ledger was sent from Grant in Georgia to Plaintiff's counsel Pete Wolfgram, who resides in Wisconsin, and Xiyan Zhang, a Pennsylvania resident. The ledger claims no income or loss was attributable to BUTTS 1177 in 2024, which directly contradicts the K-1 for tax year. Plaintiff's copy of the K-1 for 2024 shows $105,197 in earnings. Grant falsely represented zero income in 2024 to Plaintiff and GOLDEN STONE to avoid paying the distribution.

98. As a direct and proximate result of SOUTHERN CONSULTING, GOLDEN EAGLE, Grant, Meng, and Helm's RICO violations, Plaintiff has been

injured in its business and property and is entitled to recover threefold damages, costs, and attorneys' fees pursuant to §18 U.S.C 1964(c).

99. Plaintiff was unaware of its injury due to SOUTHERN CONSULTING, GOLDEN EAGLE, Grant, Meng, and Helm's RICO violations until Plaintiff received a K-1 form showing significant profits and deductions on the BUTTS Tract from Defendants in 2024. Up to this point, Defendants had concealed their activities—namely that they had withheld several years' profits generated from the tract from Plaintiff and GOLDEN STONE—such that a person without a real estate background would be unable to uncover them. Upon receipt of said form, Plaintiff became aware of potential misdeeds by Defendants and made a reasonable inquiry into the issues with professional assistance. Plaintiff only recently discovered the mis-indexed deed listing the May 2025 transaction with WILLIAM T. MYLES, SR. FAMILY, L.L.L.P for $6,455,570, and commenced suit shortly thereafter.

## COUNT TWO – BREACH OF OPERATING AGREEMENT

**(as to all Defendants)**

100. Plaintiff re-incorporates and re-alleges as if fully set forth herein paragraphs 1 - 99.

101. BLESSING for all relevant times herein was a member of BUTTS.

102. Defendants are estopped from denying the existence and enforceability of the Operating Agreement.

103. In accordance with the BUTTS' Operating Agreement, through its managing agent (Jeff R. Grant), BUTTS could not without consent of all Members, permit GOLDEN EAGLE or any other party to become a Member without paying the initial capital contributions to the LLC.

104. In accordance with the BUTTS' Operating Agreement, BUTTS could not without consent of all Members, avoid paying profit distributions to all Members of the LLC.

105. BUTTS 1177 has realized clear, disposable net profits, has no operational need to retain those profits, and the fiscal years in which those profits were earned have closed. Defendants cannot rely on potential and future distributions to cure Plaintiff's injury. Although the Operating Agreement does not set out a specific timeframe for distributions, Georgia law and common practice requires that these distributions be made within a reasonable time period. Withholding those funds past the standard fiscal accounting cycles, while Plaintiff is exposed to and incurs tax liabilities, exceeds any reasonable time argument that can be levied. Additionally, Defendants' action of delaying distributions constitutes tax misconduct, which has injured Plaintiff. BUTTS 1177 is a pass-through entity for taxation purposes, meaning Plaintiff is legally required to pay income tax on its

share of BUTTS 1177's profits via personal IRS tax returns—regardless of whether it actually receives the cash distribution.

106. In accordance with the BUTTS' Operating Agreement, BUTTS could not without consent of all Members, alter the Manager of BUTTS to be SOUTHERN CONSULTING.

107. In accordance with the BUTTS' Operating Agreement, BUTTS could not without consent of all Members, add Members to BUTTS.

108. In accordance with the BUTTS' Operating Agreement, BUTTS could not without consent of all Members, contract for debt or incur liabilities.

109. Pursuant to O.C.G.A. § 13-6-2, BLESSING has been deprived of the benefits of the BUTTS' Operating Agreement by GOLDEN.

110. Pursuant to O.C.G.A. § 14-11-601, BLESSING seeks to remove or disassociate GOLDEN EAGLE and SOUTHERN CONSULTING as both Manager and as Member of BUTTS, without any form of compensation. This will prevent further damages to BLESSING through Defendants' self-interested mismanagement of BUTTS, and it is an equitable result as Defendants never made an initial contribution to BUTTS.

111. Under O.C.G.A. § 9-3-24, the statute of limitations for the breach of written contracts is generally recognized as 6 years from the date of the actual breach. Despite this standard, if the breaching party actively uses fraud or deception

to conceal their breach, the statute of limitations is tolled under O.C.G.A. § 9-3-96. Moreover, in circumstances where two parties are in a confidential relationship wherein one party owes the other the fiduciary duty of utmost good faith, active fraud and deception are not required to toll Georgia Code § 9-3-96. Mere silence on behalf of the fiduciary and their failure to disclose the material facts is enough to pause the statute of limitations until Plaintiff discovered their malfeasance in these instances. See *King v. King,* 316 Ga. 354, 888 S.E.2d 166 (2023). In the instant case, Defendants' fiduciary duties as Managers and Members of BUTTS 1177 are established by Georgia law. See O.C.G.A. § 14-11-305 (4). The statute of limitations has thus been tolled.

**COUNT THREE– SUPPRESSION OF FACT AS FRAUD**

**(as to all Defendants)**

112. Plaintiff re-incorporates and re-alleges as if fully set forth herein paragraphs 1 - 111.

113. BLESSING was at all times and currently is a Member of BUTTS.

114. Defendants, as the Managers of BUTTS, had a confidential relationship with Plaintiff and owe a fiduciary duty to act in good faith and in the best interests of the Members of BUTTS, pursuant to both Georgia law and the Operating Agreement.

115. Defendants have intentionally misled or omitted essential information that they have a duty to disclose to BLESSING about the initial capital contributions, BUTTS' book of business, and the existence of liens on and conveyances of the property owned by BUTTS.

116. Defendants did not provide BLESSING with information about initial capitalization for BUTTS or with evidence of the profits, losses, or distributions from BUTTS in in any year since the entity was created in 2017.

117. Defendants have accepted, retained, and benefited from these distributions, to their sole advantage.

118. Pursuant to O.C.G.A. § 23-2-53, BLESSING's damages occurred as a result of Defendants' misrepresentations or omissions. Defendants suppressed material facts which they were under an obligation to communicate, due to their confidential relationship with Plaintiff, which constitutes fraud to the same extent as an actual false representation. See *Goldston v. Bank of America Corp.*, 259 Ga. App. 690, 577 S.E.2d 864 at 868 (2003). Plaintiff is owed monies in unpaid ownership distributions and profits in an amount as determined by the trier of fact.

119. Under O.C.G.A. § 9-2-53, the statute of limitations for the suppression of facts as fraud is generally recognized as 4 years from the date of the actual fraud. Despite this standard, the statute of limitations can be tolled under O.C.G.A. § 9-3-96, in certain instances, such as where two parties are in a confidential relationship.

Where one party owes the other the fiduciary duty of utmost good faith, active fraud and deception are not required to toll Georgia Code § 9-3-96. Mere silence on behalf of the fiduciary and their failure to disclose the material facts is enough to pause the statute of limitations under Georgia Code § 9-3-96 until Plaintiff discovered the Defendants' fraud in these instances. In the present case, Defendants' fiduciary duties as Managers and Members of BUTTS 1177 are established by Georgia law. See O.C.G.A. § 14-11-305 (4). The statute of limitations has thus been tolled.

**COUNT FOUR – BREACH OF FIDUCIARY DUTY**

**(as to all Defendants)**

120. BLESSING re-incorporates and re-alleges as if fully set forth herein paragraphs 1 - 119.

121. Defendants, as the Managers and Members of BUTTS, owe and continue to owe a fiduciary duty to Lee and BLESSING. A fiduciary duty exists "where one party is so situated as to exercise a controlling influence over the will, conduct, and interest of another or where, from a similar relationship of mutual confidence, the law requires the utmost good faith, such as the relationship between partners, principal and agent, etc." O.C.G.A § 23-2-58. Additionally, Section 4.5 of the Operating Agreement specifies that the Manager of BUTTS will "perform their duties as Manager in good faith, in a manner they reasonably believe to be in the

best interests of the Company, and with such care as an ordinarily prudent person in a like position would use under similar circumstances."

122. Defendants breached that duty to BLESSING through their breach of the Operating Agreement, the money had and received, and through their fraud.

123. BLESSING has suffered significant damages proximately and directly caused by Defendants' breaches of its fiduciary duty.

124. Defendants owe BLESSING damages, as noted in preceding paragraphs, as will be determined by the trier of fact.

**COUNT FIVE – ACCOUNTING**
**(as to all Defendants)**

125. BLESSING re-incorporates and re-alleges as if fully set forth herein paragraphs 1 - 124.

126. BLESSING demands an equitable accounting of BUTT's financial records to determine the value of monies owed to it in the form of distributions which were never paid from July 17, 2017 to present and what amounts, if any, were paid to Meng, Grant, and Helms.

**COUNT SIX – ATTORNEY FEES**
**(as to all Defendants)**

127. BLESSING re-incorporates and re-alleges as if fully set forth herein paragraphs 1 - 126.

128. As a result of Defendants' bad faith, being stubbornly litigious and/or causing unnecessary expense to BLESSING, BLESSING seeks attorney fees pursuant to O.C.G.A. § 13-6-11.

**COUNT SEVEN – PUNITIVE DAMAGES**
**(as to all Defendants)**

129. BLESSING re-incorporates and re-alleges as if fully set forth herein paragraphs 1 - 128.

130. As a result of Defendants' willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences, Defendants are responsible for paying punitive damages in an amount to be determined by the trier of fact.

**COUNT EIGHT – DECLARATORY JUDGMENT**
**(as to Meng, Grant, Southern Consulting, and Golden Eagle)**

131. Plaintiff re-incorporates and re-alleges as if fully set forth herein paragraphs 1 - 130.

132. Pursuant to 28 U.S.C. § 2201, this Court may declare the rights and other legal relations of any interested party petitioning for such declaration, whether or not further relief is or could be prayed; and the declaration shall have the force and effect of a final judgment or decree and be reviewable as such.

133. An actual controversy has arisen and now exists between Plaintiff and Defendants concerning their respective rights and obligations under the BUTTS

Operating Agreement. Defendants' actions have created a dispute necessitating judicial determination.

134. BLESSING seeks a declaration, which additionally is specifically permitted in Georgia law, to involuntarily remove or disassociate Defendants as Managers and as Members of BUTTS, without compensation.

**COUNT NINE – CONVERSION AND CONSPIRACY**
**(as to all Defendants)**

135. Plaintiff realleges and reaffirms paragraphs 1 through 134.

136. The actions of the Defendants herein constitute a conspiracy to commit each of the acts alleged.

137. As a result of such conspiracy, each of the Defendants is liable for the acts of each of the actions of every other Defendants as set forth herein.

138. Plaintiff, on its own behalf and in the name and right of BUTTS, is entitled to recover all damages awarded against any single Defendant herein against all the Defendants.

**COUNT TEN - CONSTRUCTIVE TRUST**

**(as to all Defendants)**

139. BLESSING realleges and reaffirms each and every allegation contained in paragraphs 1 through 138.

140. Plaintiff is entitled to a constructive trust be placed on the assets of the Defendants for purposes of recovering all assets BUTTS wrongfully diverted by the Defendants as set forth herein.

**COUNT ELEVEN - DISREGARDED CORPORATE VEIL**
**(as to all Defendants)**

141. Plaintiff realleges and reaffirms each and every allegation contained in paragraphs 1 through 140.

142. Jeff R. Grant controls and owns SOUTHERN CONSULTING.

143. Qin Meng, Benjamin M. Helms, and Jeff R. Grant control and own GOLDEN.

144. Qin Meng, Benjamin M. Helms, and Jeff R. Grant have completely disregarded the corporate existences of the entities they control and own.

145. As a result of such actions, Plaintiff, on its own behalf and in the name and right of BUTTS, is entitled to recover from Qin Meng, Benjamin M. Helms, and Jeff R. Grant all damages for which the corporate and limited liability company Defendants are held liable in this matter.

**COUNT TWELVE - DISLOYAL SERVANT**
**(as to all Defendants)**

146. Plaintiff realleges and reaffirms each and every allegation contained in paragraphs 1 through 145.

147. The actions of Qin Meng, Benjamin M. Helms, and Jeff R. Grant, SOUTHERN CONSULTING and GOLDEN EAGLE as set forth herein require any

and all "fees" paid to such parties by or on behalf of BUTTS be forfeited and disgorged.

148. BLESSING is entitled to a judgment against Qin Meng, Benjamin M. Helms, Jeff R. Grant, SOUTHERN CONSULTING and GOLDEN EAGLE disgorging all fees paid to these Defendants by or on behalf of BUTTS.

**COUNT THIRTEEN – ATTACHMENT**

**(as to all Defendants)**

149. BLESSING realleges and reaffirms each and every allegation contained in paragraphs 1 through 148.

150. Plaintiff, on its own behalf and in the name and right of BUTTS, is entitled to an order from this Court attaching all funds paid to SOUTHERN CONSULTING, GOLDEN EAGLE as "membership distributions" from BUTTS and currently held by them or any of the other Defendants.

**COUNT FORTEEN – BAD FAITH**

**(as to all Defendants)**

151. Plaintiff realleges and reaffirms each and every allegation contained in paragraphs 1 through 150.

152. The Defendants actions as set forth herein have been undertaken in bad faith, have been stubbornly litigious and have caused Plaintiff unnecessary trouble and expense.

153. As a result of such conduct by Defendants, Plaintiff is entitled to recover its expenses of litigation in prosecuting this action, including its reasonable attorneys' fees, against the Defendants, jointly and severally.

**COUNT FIFTEEN – RECEIVER**

**(as to all Defendants)**

154. Plaintiff realleges and reaffirms each and every allegation contained in paragraphs 1 through 153 of this Verified Complaint as fully set forth herein.

155. Plaintiff is entitled to an appointment of a receiver for BUTTS for purposes of recovering all assets of such entities wrongfully diverted by the Defendants.

156. BLESSING is entitled to an order from the Court directing the Receiver to recover all assets of BUTTS wrongfully diverted by the Defendants and to obtain such other judgments and relief against the Defendants for all damages incurred by such entities by the actions of the Defendants as set forth herein.

WHEREFORE, BLESSING demands judgment against GOLDEN EAGLE, SOUTHERN CONSULTING, Grant, Meng, and Helms, as follows:

a) Compensatory damages in an amount to be determined at trial;

b) Punitive damages;

c) Treble damages pursuant to 18 U.S.C. § 1964(c);

d) Prejudgment and post-judgment interest;

e) Attorneys' fees and costs of this action; and

f) Such other and further relief as this Court deems just and proper.

BLESSING hereby demands a trial by jury on all issues so triable.

Respectfully submitted this 14th day of September, 2026,

By:/s/ Xiyan Zhang________
Xiyan Zhang
Pete S. Wolfgram (*Pro Hac Vice*)
Jason Marion (*Pro Hac Vice*)
STRATUM LAW LLC
18 Campus Blvd. Ste. 100
Newtown Square, PA, 19073
xzhang@stratumlaw.com
pwolfgram@stratumlaw.com
*Attorneys for Plaintiff*
*BLESSING PROPERTY GROUP, LLC*