# Exhibit C

# OPERATING AGREEMENT

**OF**

# BUTTS 1177, LLC

**Any securities created by this Operating Agreement, if any, have not been registered under the Georgia Securities Act of 1973, as amended (the "State Act"), in reliance upon the exemption from registration set forth in §10-5-9(13) or otherwise in the State Act. In addition, any securities created by this Operating Agreement, if any, have not been registered with the United States Securities and Exchange Commission in reliance upon the exemption from such registration as set forth in §4(a)(2) or otherwise in the Securities Act of 1933 (the "Federal Act"), nor have same been registered under the securities or Blue Sky laws of any other jurisdiction. The membership interests created by this Operating Agreement have been acquired for investment purposes only, and may not be offered for sale, pledged, hypothecated, sold or transferred except in compliance with the terms and conditions of this Operating Agreement, and in a transaction which is either exempt from registration under both the State Act and the Federal Act, or pursuant to an effective registration statement under said Acts.**

THIS OPERATING AGREEMENT is entered into as of the 17th day of July, 2017, by and among **GOLDEN STONE INTERNATIONAL INVESTMENT CO., LLC, BLESSING PROPERTY GROUP, LLC and GOLDEN EAGLE CAPITAL INVESTMENTS, LLC** (hereinafter the "Members"), and this agreement supersedes any previous operating agreement which may have been executed by, or on behalf of, the members of BUTTS 1177, LLC.

## ARTICLE I
## GENERAL PROVISIONS

1.1 Formation. On July 17, 2017, the Members caused BUTTS 1177, LLC to be organized as a Georgia limited liability company (hereinafter the "Company") by preparing and filing Articles of Organization with the Georgia Secretary of State in accordance with the Georgia Limited Liability Company Act, codified at Chapter 11 of Title 14 of the Official Code of Georgia Annotated (the "Act").

1.2 Name. The name of the Company is BUTTS 1177, LLC.

1.3 Principal Place of Business. The principal place of business of the Company will be 118 S. Main Street, Jonesboro, GA 30236, which is located in Clayton County, Georgia. Other offices

may be established from time to time by the Company at such place or places where the Company is qualified to do business.

1.4 Members. The names and addresses of the Members are set forth in Exhibit "A" which is attached hereto and by reference incorporated herein and made a part hereof.

1.5 Registered Office; Agent. The initial registered agent and address for service of process upon the Company will be DAVID O. HARRIS, whose address is 118 S. Main Street, Jonesboro, GA 30236. The Members, by unanimous consent, may change the agent and address for service of process from time to time, in which case the Members will cause an appropriate report to be filed in the office of the Georgia Secretary of State within fifteen (15) days and will pay the appropriate fee.

## ARTICLE II
## CAPITAL CONTRIBUTIONS

2.1 Initial Capital Contributions. The contribution of a Member may be in cash, property, or services rendered or a promissory note or other obligation to contribute cash or property or to perform services. Each Member will make an initial cash capital contribution to the Company as set forth in attached Exhibit A (the "Members' Proportions") as that Member's initial capital contribution.

2.2 Obligation for Contributions or Distributions. Each Member shall be obligated to perform any written promise to contribute cash or property or to perform services, even if the Member is unable to perform because of death, disability, or any other reason. If a Member does not make the required contribution of property or services, the Member will be obligated to contribute cash equal to that portion of the value, as stated in the Company records, of such contribution that has not been made. The obligation of a Member to make a contribution or return money or other property paid or distributed in violation of the Act may be compromised only by consent in writing of all the Members. Notwithstanding the compromise, a creditor of the Company who extends credit or otherwise acts in reliance on the original obligation may enforce the original obligation.

2.3 Additional Contributions.

(a) Each Member shall be obligated to contribute such additional capital to the Company as will be determined by a majority vote of the Members from time to time to be reasonably necessary or desirable for the effective continuation of the business of the Company. Upon the making of any such determination, the Company will give written notice to each Member of the amount of required additional contribution, such amount to be in the same relative proportions as set forth in Exhibit A. Each Member will deliver to the Company his/her additional contribution no later than 30 days following the date such notice is given. If a Member defaults by

failing to make such additional contribution within such time, then the non-defaulting Members will have the following options at their sole discretion:

(i) Any one or more non-defaulting Members (the "Electing Members") may elect to make the contribution on behalf of the defaulting Member, in which case the defaulting Member will execute promissory notes payable to the order of the Electing Members reflecting the amounts so paid by the respective Electing Members. Such note or notes will bear interest at an adjustable rate equal to the prime rate of SunTrust Bank, Atlanta, Georgia, or such successor bank into which such bank may hereafter be merged with, or acquired by, adjusted from time to time, plus four percentage points. The term of each note will be six months. Each note will be secured by the defaulting Member's interest in the Company, and the defaulting Member agrees to execute standard form Georgia UCC financing statements to perfect the security interests. This Agreement constitutes the security agreement between the defaulting Member and each Electing Member. For so long as the defaulting Member owes an Electing Member any principal, interest, or costs, the defaulting Member's share of any distribution by the Company will be paid over directly to the Electing Members pro rata, to be applied first to payment of such costs, then to payment of such accrued interest, and then to repayment of such principal. Any balance of such distribution after such payment will be paid over to the defaulting Member. If the defaulting Member should fail to pay the principal balance plus accrued interest on any promissory note when due, the Electing Member holding such note will be entitled to enforce his/her rights under the note or notes, any documents securing the note or notes, and this Agreement.

(ii) The non-defaulting Members may elect not to make the contribution on behalf of a defaulting Member, in which case the Company will dissolve. Failure of the non-defaulting Members to make a contribution on behalf of a defaulting Member within thirty (30) days after it is due will be deemed an election by the non-defaulting Members not to make contribution.

If the defaulting Member fails or refuses to execute any document, instrument, or agreement called for by the terms of this Section 2.3, the defaulting Member will be deemed to have appointed any non-defaulting Member as his/her attorney-in-fact, with full power of substitution, to execute any such document, instrument, or agreement and to do any act that the defaulting Member could do, acting personally, to effect the provisions of this Section 2.3. The power of attorney will be a durable power of attorney, will be coupled with an interest, and will be irrevocable.

None of the terms, covenants, obligations, or rights contained in this Section 2.3 is or will be deemed to be for the benefit of any person or entity other than the Members and the Company, and no such third person will under any circumstances have any right to compel any actions or payments by the Members.

2.4 Capital Accounts. Individual capital accounts will be established and maintained for each of the Members in accordance with the following provisions:

(a) To each Member's capital account there will be credited such Member's capital contributions, such Member's distributive share of profits, and the amount of any Company

liabilities that are assumed by such Member or that are secured by any Company property distributed to such Member.

(b) To each Member's capital account there will be debited the amount of cash and the value of any Company property distributed to such Member pursuant to any provision of this Agreement, such Member's distributive share of losses, and the amount of any liabilities of such Member that are assumed by the Company or that are secured by any property contributed by such Member to the Company.

## ARTICLE III
## ALLOCATIONS AND DISTRIBUTIONS

3.1 Sharing of Profits and Losses. The profits and losses of the Company will be allocated among the Members in accordance with the Members' Proportions.

3.2 Sharing of Distributions. The cash available for distribution, as determined from time to time by the Members, will be distributed to the Members in accordance with the Members' Proportions. Members will be entitled to receive distributions from the Company, before resignation from the Company and before the dissolution and winding up thereof, only in accordance with the provisions of this Article III.

3.3 Other Allocation Rules.

(a) For purposes of determining the profits, losses, or any other items allocable to any period, all items of Company income, gain, loss, expense, deduction, and credit will be determined on a daily, monthly, or other basis, as determined by the Members, using any permissible accounting method under applicable law and regulations.

(b) Except as otherwise provided in this Agreement, or by majority vote of the Members, all items of Company income, gain, loss, expense, deduction, and credit and any other items not otherwise provided for, will be divided among the Members in accordance with the Members' Proportions.

3.4 Distribution in Kind. No Member will have a right to demand and receive distributions in any form other than cash. The Members will, however, have the right to make distributions in a form other than cash, in accordance with this Section 3.4. No Member will be compelled to accept a distribution of any asset in kind to the extent that the percentage of the asset distributed to him/her exceeds a percentage of that asset which is equal to the percentage in which the Member shares in distributions pursuant to Section 3.2.

3.5 Right to Distribution. At the time a Member becomes entitled to receive a distribution, he/she has the status of and is entitled to all remedies available to a creditor of the Company with respect to the distribution.

3.6 Limitations on Distributions. A Member may not receive a distribution from the Company to the extent that, after giving effect to the distribution, all liabilities of the Company, other than liabilities to Members on account of their membership interests, would exceed the fair market value of the Company's assets.

3.7 Liability upon Return of Contribution. Any Member who has received the return of any part of his contribution in violation of this Agreement is liable to the Company for a period of three years thereafter for the amount of the contribution wrongfully returned. A Member receives a return of his contribution to the extent that a distribution to him reduces his share of the fair value of the net assets of the Company below the value, as set forth in the Company's records, of his contribution which has not been distributed to him.

## ARTICLE IV
## MANAGEMENT

4.1 Management. The business and affairs of the Company will be managed by its Manager. The Manager will direct, manage, and control the business of the Company to the best of its ability. Except for situations in which the approval of the Members is expressly required by this Operating Agreement or by non-waivable provisions of applicable law, the Manager will have full and complete authority, power, and discretion to manage and control the business, affairs, and properties of the Company, to make all decisions regarding those matters, and to perform any and all other acts or activities customary or incident to the management of the Company's business. At any time when there is more than one Manager, any one Manager may take any action permitted to be taken by the Managers for ministerial actions and other duties involving the day-to-day operation of the Company; however any action which involves the borrowing of funds, or securing credit for the Company, or any distribution to Members, shall require the action of all Managers.

4.2 Election, Term and Qualifications. The Company will initially have one (1) Manager, such Manager being GOLDEN EAGLE CAPITAL INVESTMENTS, LLC. The number of Managers of the Company may be increased or decreased by amendment to this Agreement, but no decrease will have the effect of shortening the term of any incumbent Manager. The initial Manager named in this Section 4.2 will hold office indefinitely, until such Manager resigns and its successor(s) have been elected and qualified, or until removed or replaced by a vote of Members holding a majority of the Members' Proportions. Managers must be legally-formed entities or natural persons eighteen years of age or older, but need not be residents of the State of Georgia or Members of the Company.

4.3 Vacancies. Any vacancy occurring for any reason in the Manager of the Company, or a position to be filled by reason of an increase in the number of Managers, will be filled by written agreement of a majority of the Managers then in office, if any, or by election at an annual meeting or at a special meeting of Members called for that purpose. A Manager chosen to fill a vacancy will serve the unexpired term of his/her predecessor in office. A Manager chosen to fill a position

resulting from an increase in the number of Managers will hold office until the next annual meeting of Members and until his/her successor has been elected and qualified.

4.4 Removal. At a meeting called expressly for that purpose, all Managers or any lesser number may be removed with or without cause by a vote of the Members holding a majority of Members' Proportions then entitled to vote at an election of Managers.

4.5 Duties of Manager. All Managers will perform their duties as Manager in good faith, in a manner they reasonably believe to be in the best interests of the Company, and with such care as an ordinarily prudent person in a like position would use under similar circumstances. A person who so performs his/her duties will not have any liability by reason of being or having been a Manager of the Company.

In performing his/her duties, a Manager is entitled to rely on information, opinions, reports, or statements of the following persons or groups unless the Manager has knowledge concerning the matter in question that would cause such reliance to be unwarranted:

(a) One or more employees or other agents of the Company whom the Manager reasonably believes to be reliable and competent in the matters presented;

(b) Any attorney, public accountant, or other person as to matters which the Manager reasonably believes to be within such person's professional or expert competence; or

(c) A committee upon which the Manager does not serve, duly designated in accordance with a provision of the Articles of Organization or this Operating Agreement.

A Manager has no authority to do any act in contravention of either the Articles of Organization or this Operating Agreement.

Every Manager is an agent of the Company for the purpose of its business, and the act of every Manager, including the execution in the Company name of any instrument for apparently carrying on in the usual way the business of the Company, binds the Company unless the Manager so acting otherwise lacks the authority to act for the Company and the person with whom the Manager is dealing has knowledge of the fact that he/she has no such authority.

4.6 Contracting Debts; Capital Expenditures. Except as otherwise provided in this Operating Agreement or the Act, no debt will be contracted or liability incurred by or on behalf of the Company, except by an action of the Manager with the consent of the Member(s).

4.7 Company Property. Real and personal property owned or purchased by the Company will be held and owned, and conveyance made, in the Company name. Instruments and documents providing for the acquisition, mortgage, or disposition of property of the company will be valid and binding upon the Company if executed by one or more Managers of the Company.

4.8 Business Transactions With the Company. A Member or Manager may lend money to, act as surety for, and transact other business with the Company and, subject to other applicable law, has the same rights and obligations with respect thereto as a person who is not a Member or

Manager, except that this Section 4.8 will not be construed to relieve a Manager from any of his/her duties as specified in Section 4.5.

4.9 Tax Matters Partner. The Manager of the Company shall be the *Tax Matters Partner* (the "TMP") pursuant to Section 6231(a)(7) of the Internal Revenue Code provided that the Manager is also a Member of the Company. If the Manager is not a Member of the Company, then any Member of the Company shall be the TMP. All reasonable expenses and professional fees incurred by the TMP shall be the expenses of the Company, and the TMP shall be reimbursed for any such fees advanced. Additionally, the Company shall indemnify and hold the TMP harmless from any loss, damage, cost or expenses (including reasonable attorney fees) incurred by the TMP as a result of any act performed or omitted on behalf of the Company, or any Member of the Company; provided, however, that the TMP shall not be relieved of liability for any losses, damages, costs or expenses arising from any fraud, deceit or gross negligence of the TMP, and provided further that no Member of the Company shall be personally liable to the TMP for such indemnification.

## ARTICLE V
## MEMBERS

5.1 Additional Members. After the filing of the Articles of Organization, a person may be admitted as an additional Member only upon the written consent of all Members.

5.2 Sale of Membership Interest. Any Member (the "Offering Member") may offer to sell all, but not part, of his/her/its Membership interest to the other Members of the Company (the "Offeree Members") by making an offer in writing to all such other Members. The purchase price for such interest will be the fair market value of that interest as of the date of such notice, as determined by a third-party appraiser agreed to by all of the Members. If they cannot so agree, any Member may apply to a court of competent jurisdiction to select an appraiser. The Offeree Members will have thirty (30) days from the date of their receipt of the fair market value of such interest to accept or reject it. If no Offeree Member accepts such offer in writing within such thirty-day period, all Offeree Members will be deemed to have rejected such offer and the Members will dissolve and liquidate the Company.

5.3 Resignation. A Member may resign or withdraw as a Member at any time upon ninety (90) days' prior written notice to all other Members. Upon and after the effective date of such resignation or withdrawal, the resigning or withdrawing Member will have no right to participate in the management of the business and affairs of the Company and is entitled only to receive the share of the profits or other compensation by way of income and the return of contributions to which such Member would have been entitled if the Member had not resigned or withdrawn.

5.4 Deceased or Incompetent Individual Members; Dissolved or Terminated Legal Entity Members. If a Member who is an individual dies or a court of competent jurisdiction adjudges

him/her to be incompetent to manage his/her person or his/her property, or if a Member who is a corporation, limited liability company, trust, or other entity is dissolved or terminated, the Member's executor, administrator, guardian, conservator, or other legal representative (or the legal representative or successor of the Member, respectively) will have no right to participate in the management of the business and affairs of the Company, but will only be entitled to receive the share of profits or other compensation by way of income and the return of contributions to which that Member would otherwise be entitled.

5.5 Purchase of Membership Interest of Terminated Member. Following the resignation or withdrawal of a Member in accordance with Section 5.3, or the death, declaration of incompetency, or dissolution of a Member in accordance with Section 5.4, or the bankruptcy of a Member, the Company or the remaining Members will have an option to purchase the entire interest, but not less than the entire interest, of the outgoing Member. Exercise of the option will be by written notice given to the Member or the Member's legal representative within ninety (90) days after the date of resignation, withdrawal, or triggering event. The purchase price for such interest will be the fair market value of that interest as of the date of resignation, withdrawal, or triggering event, as determined by a third-party appraiser agreed to by all of the Members or their representatives. If they cannot so agree, any Member may apply to a court of competent jurisdiction to select an appraiser. Exercise of the option will be made by written notice within thirty (30) days after receipt of the purchase price from the appraiser. The purchase price will be paid to the outgoing Member, or his/her heir(s), representative(s), successor(s), or assign(s), within ninety (90) days after the notice of exercise of option, either in cash or through payment of a cash down payment of twenty percent (20%) of the purchase price, and the delivery of a promissory note for the balance of the purchase bearing simple interest at the applicable rate of interest as determined under Section 1274 of the Internal Revenue Code, or any successor to such Section, payable annually and requiring four (4) equal annual payments of principal and interest, with the first such payment due one (1) year after the date of execution of such note.

5.6 Transferability of Interest. The interest of each Member of the Company constitutes the personal property of the Member and may be transferred or assigned. However, if all of the other Members of the Company (other than the Member proposing to dispose of his/her interest) do not approve of the proposed transfer or assignment by unanimous written consent, then, except for a transfer pursuant to Section 5.2 or Section 5.5, the transferee of the Member's interest will have no right to participate in the management of the business and affairs of the Company or to become a Member, and will only be entitled to receive the share of profits or other compensation by way of income and the return of contributions to which that Member would otherwise be entitled. A Substituted Member (i.e., a person admitted to all the rights of a Member who has died or has assigned his/her interest in the Company and such transfer has been approved as set forth in the previous sentence of this Section 5.6) has all the rights and powers and is subject to all the restrictions and liabilities of his/her assignor; except that the substitution of the assignee does not release the assignor from liability to the Company under Section 2.2.

5.7 Rights of Creditor Against a Member. On application to a court of competent jurisdiction by any judgment creditor of a Member, the court may charge the membership interest of the Member with payment of the unsatisfied amount of the judgment with interest thereon and may then or later appoint a receiver of the Member's share of the profits and of any other money due or to become due to the Member in respect of the Company and make all other orders, directions, accounts, and inquiries which the debtor Member might have made, or which the circumstances of the case may require. To the extent so charged, except as provided in this Section 5.7, the judgment creditor will have no right to participate in the management of the business and affairs of the Company, but will only be entitled to receive the share of profits or other compensation by way of income and the return of contributions to which that Member would otherwise be entitled. The membership interest charged may be redeemed at any time before foreclosure. If the sale is directed by the court, the membership interest may be purchased without causing a dissolution with separate property by any one or more of the Members. With the consent of all Members whose membership interests are not being charged or sold, the membership interest may be purchased without causing a dissolution with property of the Company. This Section 5.7 will not deprive any Member of the benefit of any exemption laws applicable to his/her membership interest.

5.8 Liability of Members. Members of the Company are not liable under a judgment, decree, or order of court, or in any other manner, for a debt, obligation, or liability of the Company.

5.9 Annual Meeting. The Members need not have annual meetings.

5.10 Special Meetings. Special meetings of the Members, for any purpose or purposes, unless otherwise prescribed by statute, may be called by any Member.

5.11 Notice of Meetings. Except as provided in Section 5.12, written notice stating the place, day, and hour of the meeting and, in case of a special meeting, the purpose for which the meeting is called, will be delivered not less than ten (10) days nor more than fifty (50) days before the date of the meeting, either personally or by mail, by or at the direction of any Member or person calling the meeting, to each Member of record entitled to vote at such meeting. If mailed, such notice will be deemed to be delivered when deposited in the United States mail, addressed to the Member, with postage prepaid. However, if three successive letters mailed to the last-known address of any Member are returned as undeliverable, no further notices to such Member will be necessary until another address for such Member is made known to the Company.

5.12 Adjourned Meetings. When a meeting is adjourned to another time or place, notice need not be given of the adjourned meeting if the time and place thereof are announced at the meeting at which the adjournment is taken. At the adjourned meeting the Company may transact any business which might have been transacted at the original meeting. If the adjournment is for more than thirty (30) days, a notice of the adjourned meeting will be given to each Member entitled to vote at the meeting

5.13 Meeting of all Members. If all of the Members meet at any time and place, either within or outside of the State of Georgia, and consent to the holding of a meeting at such time and place, such meeting will be valid without call or notice, and at such meeting lawful action may be taken.

5.14 Place of Meetings. Each meeting of the Members will be held at such place, either within or outside the State of Georgia, as may be specified in the notice of the meeting, or, if no place is specified in the notice, at the registered office of the company in Georgia. The person or group calling the meeting will be entitled, but not required, to designate in the call the place of the meeting to be specified in the notice of the meeting.

5.15 Waiver of Notice. When any notice is required to be given to any Member under the provisions of the Act or under the provisions of the Articles of Organization or this Agreement, a waiver thereof in writing signed by the person entitled to such notice, whether before, at, or after the time stated therein, will be equivalent to the giving of such notice. By attending a meeting, a Member: (a) waives objection to lack of notice or defective notice of such meeting unless the Member, at the beginning of the meeting, objects to the holding of the meeting or the transactions of business at the meeting; and (b) waives objection to consideration at such meeting of a particular matter not within the purpose or purposes described in the meeting notice unless the Member objects to considering the matter when it is presented.

5.16 Quorum; Action of Members. At all meetings of the Members, Members holding a majority of the Members' Proportions, as specified in Section 2.3, represented in person or by proxy, will constitute a quorum, and at any meeting at which a quorum is present the affirmative vote of Members holding a majority of the Members' Proportions represented at the meeting and entitled to vote on the subject matter will be the act of the Members, unless the vote of a greater proportion or number is required by the Act, the Articles of Organization, or this Agreement. If a quorum is not present or represented at any meeting of the Members, Members holding a majority of the Members' Proportions represented at the meeting may adjourn the meeting from time to time for a period not to exceed sixty (60) days at any one adjournment. Except as hereafter provided, when a meeting is adjourned to another time or place, notice need not be given of the adjourned meeting if the time and place thereof are announced at the meeting at which the adjournment is taken. However, if the adjournment is for more than thirty (30) days, a notice of the adjourned meeting will be given to each member of record entitled to vote at the meeting. At any such adjourned meeting at which a quorum is present or represented, any business may be transacted which might have been transacted at the original meeting. The Members present at a duly organized meeting may continue to transact business until adjournment, notwithstanding the withdrawal of enough Members to leave less than a quorum present.

5.17 Proxies. At all meetings of Members a Member may vote in person or by proxy executed in writing by the Member or by a duly authorized attorney-in-fact. Such proxy will be filed with the Company before or at the time of the meeting. No proxy will be valid after eleven (11) months from the date of its execution, unless otherwise provided in the proxy.

5.18 Action by Members Without a Meeting. Action required or permitted to be taken at a meeting of Members may be taken without a meeting if the action is evidenced by one or more written consents describing the action taken and signed by each Member entitled to vote. Action taken under this Section 5.18 is effective when all Members entitled to vote have signed the consent, unless the consent specifies a different effective date. Written consent of the Members entitled to vote has the same force and effect as a unanimous vote of such Members and may be stated as such in any document.

## ARTICLE VI
## INDEMNIFICATION

The Company will indemnify the Members and make advances for expenses to the maximum extent permitted under the Act. The Company will indemnify its employees and other agents who are not Members to the fullest extent permitted by law, provided that such indemnification in any given situation is approved by a vote of Members holding a majority of the Members' Proportions.

## ARTICLE VII
## BOOKS, RECORDS, AND ACCOUNTING

7.1 Records and Books of Account.

(a) The Company will maintain proper and complete records and books of account in which will be entered fully and accurately all transactions and other matters relating to the Company's business as are usually entered into records and books of account maintained by persons engaged in businesses of like character. Such records and books of account will be kept on a cash basis for tax and book purposes and maintained in accordance with generally accepted accounting principles. The following records will be kept at the principal place of business of the Company:

(i) A current list of the name and last-known business, residence, or mailing address of each Member and Manager;

(ii) A copy of the Company's Articles of Organization and all amendments thereto, and a copy of this Agreement, together with executed copies of any written powers of attorney pursuant to which this Agreement and any Articles of Organization and all amendments thereto have been executed;

(iii) A copy of the Company's federal, state, and local income tax returns for each year;

(iv) True and full information regarding the business and financial condition of the Company, including written resolutions and minutes, if any, of the Company;

(v) True and full information regarding the amount of cash and a description and statement of the agreed value of any other property or services contributed by each Member and

that each Member has agreed to contribute in the future, and the date on which each became a Member; and

(vi) Other information regarding the affairs of the Company as is just and reasonable.

(b) Each Member and Manager will have the right to:

(i) Subject to such reasonable standards as may be established by the Managers, inspect and copy at the expense of the requesting Member or Manager any of the records listed in Section 7.1(a) above from time to time upon reasonable written demand stating the purpose for such demand, for any purpose reasonably related to the Member's interest in the Company or the Manager's position in the Company.

(ii) Have a formal accounting of the Company's affairs performed at the Member's or Manager's expense whenever circumstances render such an accounting just and reasonable.

(c) Notwithstanding anything to the contrary contained in this Agreement, the Managers will have the right to keep confidential from the Members, for such period of time as the Managers deem reasonable, any information that such Managers reasonably believe to be in the nature of trade secrets or that the Company is required by law or by agreement with a third party to keep confidential.

7.2 Fiscal Year. The fiscal year of the Company will be the calendar year.

7.3 Annual Reports. The Company will furnish to the Members, within one hundred twenty (120) days after the end of each fiscal year, an annual report containing: a balance sheet, a profit and loss statement, and such additional statements with respect to the status of the Company and the expenditure and distribution of Company funds as are considered necessary or appropriate. All such statements will be prepared by the Company and, to the extent deemed necessary or appropriate, will be reviewed by independent certified public accountants selected by the Company, and will be unaudited and prepared in accordance with the method of accounting followed or required for federal income tax reporting purposes.

7.4 Tax Information. Within ninety (90) days after the end of each fiscal year, the Company will furnish a report to each Member containing all information necessary or required by the Internal Revenue Service to be supplied to the Members for the preparation of their federal income tax returns, including a Form K-1.

7.5 Information Conclusive and Binding. The financial statements and information contained in the reports delivered pursuant to Section 7.3 will be deemed conclusive and binding upon each Member unless written objection thereto is delivered to the Company within ninety (90) days after the giving of any report to the Member.

## ARTICLE VIII
## DISSOLUTION AND LIQUIDATION

8.1 Events of Dissolution. The Company will be dissolved and its affairs be wound up only upon a majority vote of the Members to dissolve or upon the sale of substantially all of the assets of the Company. At such time the Managers will deliver to the Secretary of State for filing a Statement of Dissolution.

8.2 Liquidation. In the event of a dissolution of the Company, a proper accounting, setting forth the assets and liabilities of the Company, will be made. Based upon such accounting, the "Liquidator" (i.e., such person or persons as may be selected by vote of Members holding a majority of the Members' Proportions) will proceed to wind up the affairs of the Company and to liquidate and sell its assets in as expeditious a manner as is reasonably practicable. The Liquidator will have full power and authority to sell, assign, and encumber any or all of the Company's assets and to wind up and liquidate the affairs of the Company in an orderly and businesslike manner. All proceeds from liquidation will be distributed in the following order of priority:

(a) To creditors, including Members who are creditors, to the extent otherwise permitted by law, in satisfaction of liabilities of the Company other than liabilities to Members for interim distributions and distributions upon resignation or withdrawal;

(b) To Members and former Members of the Company in satisfaction of liabilities for interim distributions and distributions upon resignation or withdrawal;

(c) To Members of the Company for the return of their contributions and respecting their membership interests in accordance with the positive balances in their respective Capital Accounts, after taking into account the allocations of profit and loss from distributions to the Members. Any Member with a negative Capital Account following the distribution of liquidation proceeds will restore and contribute to the Company the negative balance of the Member's Capital Account before the later to occur of (i) the end of the taxable year in which the Company is liquidated, or (ii) ninety (90) days after the date of the liquidation of the Company, which amount will be paid to creditors of the Company or, if the amount contributed exceeds the amount due to creditors, will be distributed to the Members with positive balances in their Capital Accounts.

8.3 Contribution at Termination. At liquidation and termination of the Company, any Member with a deficit in his/her capital account following the distribution of liquidation proceeds will restore such deficit to the Company, which amount will be distributed to the Members in accordance with their positive capital account balances or paid to creditors.

## ARTICLE IX
## MISCELLANEOUS

9.1 Amendments. This Agreement may be altered, amended, or modified only with the prior written consent of all of the Members.

9.2 Notices. Any and all notices, demands, or other communications required or permitted under the terms of this Agreement will be in writing and will be deemed to have been duly given if delivered personally and a signed receipt is obtained therefor or if mailed by registered or certified mail, return receipt requested, postage prepaid, and addressed to the address or addresses indicated in Section 1.4. The effective date of such notice will be the date of delivery, if personally delivered and a signed receipt is obtained therefor or, if mailed, the earlier of the date set forth on the receipt of registered or certified mail or the third day after mailing. Any Member may change the address to which such notice will be given by giving notice of such change in the manner hereinabove required and directed to the Company at the principal place of business of the Company.

9.3 Partition. All real and other property (irrespective of its nature) owned by the Company will be deemed owned by the Company as an entity. Accordingly, no Member, nor any successor in interest to any Member, will have the right during the term of this Agreement to seek partition of any property of the Company, nor will any Member make application to any court or authority having jurisdiction in the matter or commence or prosecute any action or proceeding for partition and the sale thereof. Upon any breach of the provisions of this Section 9.3 by any Member, the other Members, in addition to all other rights and remedies they may have at law or in equity, will be entitled to an order restraining and enjoining such an application, action, or proceeding.

9.4 Headings. The headings contained in this Agreement are for convenience and reference only and will not be used in any way to define, limit, or expand the meaning, intent, or context of this Agreement or any provision hereof.

9.5 Construction. Unless the context in which words are used herein requires otherwise, the use of the singular number herein will include the plural and the plural the singular, the use of the masculine, feminine, or neuter pronouns will include the masculine, feminine, and neuter, and the term “person” will mean any individual, partnership, corporation, trust, or other entity.

9.6 Governing Law. This Agreement and the rights of the parties hereunder will be governed by, and construed and enforced in accordance with, the laws of the State of Georgia.

9.7 Severability. If any covenant, condition, term, or provision of this Agreement, or the application thereof to any person or in any circumstance, will be held by any court of competent jurisdiction to be invalid or unenforceable, the remainder of this Agreement, or the application of such covenant, condition, term, or provision to persons or in circumstances other than those to which it is held invalid or unenforceable, will not be affected thereby, and each covenant,

condition, term, and provision of this Agreement will be valid and enforceable to the fullest extent permitted by law.

9.8 Binding Effect. Subject to the remaining provisions hereof, this Agreement will be binding upon, and will inure to the benefit of, each of the parties hereto and their respective heirs, personal representatives, administrators, executors, successors, and assigns.

9.9 Counterparts. This Agreement may be executed in one or more counterparts, each of which will be deemed an original, and all of which taken together will constitute one and the same instrument, notwithstanding the fact that all parties are not signatory to the same original or counterpart.

IN WITNESS WHEREOF, the members have executed this Agreement as of the day and year first set forth above.

**MEMBERS:**

**GOLDEN STONE INTERNATIONAL INVESTMENT CO., LLC**

BY: Zhen Wang
Its Manager

**BLESSING PROPERTY GROUP, LLC**

BY: ______________________
Its Manager

**GOLDEN EAGLE CAPITAL INVESTMENTS, LLC**

BY: ___________________________________
Its Manager

**ACCEPTANCE BY MANAGER:**

GOLDEN EAGLE CAPITAL INVESTMENTS, LLC

BY: ___________________________________
Its Manager

# EXHIBIT A

**BUTTS 1177, LLC**

| MEMBER NAME | MEMBER'S CONTRIBUTION | MEMBER'S PROPORTION |
|---|---|---|
| Golden Stone International Investment Co., LLC | $ 1,320,000.00 | 40.00% |
| Blessing Property Group, LLC | $ 1,320,000.00 | 40.00% |
| Golden Eagle Capital Investments, LLC | $ 660,000.00 | 20.00% |
| | **$ 3,300,000.00** | **100.00%** |