# Exhibit H

5/22/2025 CANC DEED BK 1031 PG 721

eFiled & eRecorded
DATE: 7/26/2023
TIME: 2:35 PM
DEED BOOK: 00995
PAGE: 00530 - 00553
RECORDING FEES: $25.00
INTANGIBLE TAX: $0.00
PARTICIPANT ID: 2819104678
CLERK: Morgan V. Ward
Butts County, GA

Butts County Tax Parcels: 00660 00000 025 000 and 00780 00000 003 000

When recorded return to:
Thomas J. Andersen, Esq.
Andersen, Tate & Carr, P.C.
One Sugarloaf Centre, Suite 4000
1960 Satellite Boulevard
Duluth, Georgia 30097

NOTE TO RECORDING OFFICE: THIS DEED TO SECURE DEBT AND SECURITY AGREEMENT SECURES A SHORT TERM NOTE IN THE PRINCIPAL AMOUNT OF $1,800,000.00 HAVING A MATURITY DATE OF JULY 21, 2023. ACCORDINGLY, NO INTANGIBLE TAX IS DUE WITH THIS FILING.

# DEED TO SECURE DEBT AND SECURITY AGREEMENT

State of Georgia
County of ____________________

**THIS DEED TO SECURE DEBT AND SECURITY AGREEMENT** (this "Deed"), made and entered into as of the 7th day of July, 2023, by and between **BUTTS 1177, LLC,** a Georgia limited liability company ("Grantor"), having a business address at 120 S. Zack Hinton Parkway, McDonough, Georgia 30253, and **JDS HOLDINGS, LLC,** a Georgia limited liability company, party of the second part (together with its successors and assigns, "Grantee"), having a business address at 6224 Sugarloaf Parkway, Suite 160, Duluth, Georgia 30097.

W I T N E S S E T H :

THAT, for and in consideration of the sum of Ten and No/100 Dollars ($10.00) and other valuable consideration, the receipt and sufficiency whereof are hereby acknowledged, and in order to secure the indebtedness and other obligations hereinafter set forth, Grantor has granted, bargained, sold and conveyed, and does hereby grant, bargain, sell and convey, unto Grantee the following property (collectively, the "Premises"), to-wit:

All that certain tract or parcel of land (the "Land") lying and being in County, Georgia and being more particularly described in **Exhibit "A"** attached hereto and incorporated herein by this reference; and

**TOGETHER WITH**: (i) all buildings, structures and other improvements now or hereafter located on the Property or on any part or parcel of the Property (the "Improvements"); (ii)

all the tenements, hereditaments, easements and appurtenances belonging to the Property or in anyway appertaining to the Property, and the reversion or reversions, remainder or remainders thereof; (iii) all leases, undertakings to lease, contracts to rent, usufructs and other agreements for use, occupancy or possession now or hereafter in force with respect to the Property or any part or parcel of the Property or any of the Improvements, any and all guaranties of the foregoing, and any and all other leases, occupancy agreements, contracts, licenses, permits and arrangements now or hereafter affecting the Property or any part or parcel of the Property or any of the Improvements, whether written or oral and whether now or hereafter made or executed and delivered (collectively, the "Leases"); (iv) all rents, issues, income, revenues and profits now or hereafter accruing from, and all accounts and contract rights now or hereafter arising in connection with, the Property or any part or parcel of the Property or any of the Improvements, including, without limitation, all rents, issues, income, revenues and profits accruing from, and all accounts and contract rights arising in connection with, the Leases, together with all monies and proceeds now or hereafter due or payable with respect thereto or on account thereof, and all security deposits, damage deposits and other funds paid by any lessee, sublessee, tenant, subtenant, licensee, permitted or other obligee under any of the Leases, whether paid in a lump sum or installments (collectively, the "Rents"); (v) all minerals, flowers, crops, trees, timber, shrubbery and other emblements now or hereafter located on the Property or under the Property or on or under any part or parcel of the Property; (vi) all estates, rights, title and interest in the Property, or in any part or parcel of the Property; (vii) all equipment, machinery, apparatus, fittings, furniture, furnishings and personal property of every kind or description whatsoever now or hereafter located on the Property or on any part or parcel of the Property or in or on any of the Improvements, and used in connection with the operation or maintenance of the Property or any of the Improvements, all accessions and additions to and replacements of the foregoing and all proceeds (direct and remote) of the foregoing, including, without limitation, all plumbing, heating, lighting, ventilating, refrigerating, water-heating, incinerating, air-conditioning and heating, and sprinkling equipment and systems, and all screens, awnings and signs; (viii) all fixtures (including all trade, domestic and ornamental fixtures) now or hereafter on the Property or on any part or parcel of the Property or in or on any of the Improvements, whether actually or constructively attached or affixed, including, without limitation, all plumbing, heating, lighting, ventilating, refrigerating, water-heating, incinerating, air-conditioning and heating, and sprinkling fixtures, and all screens, awnings and signs which are fixtures; (ix) all building materials, supplies, goods, machinery and equipment delivered to the Property and placed on the Property for the purpose of being affixed to or installed or incorporated or otherwise used in or on the Property or any part or parcel of the Property or any of the Improvements, and all accessions and additions to and replacements of the foregoing and all proceeds (direct or remote) of the foregoing; (x) all payments, awards, judgments and settlements (including interest thereon) to which Grantor may be or become entitled as a result of the exercise of the right of eminent domain with respect to the Property or any part or parcel of the Property or any of the Improvements; (xi) all policies of insurance which insure against loss or damage to any property described above and all proceeds from and payments under such policies; (xii) all authorizations, licenses, permits, including sewer tap permits, water availability permits, and allocations, contracts, management agreements, franchise agreements, and occupancy and other certificates concerning the ownership, use and operation of the Property; (xiii) all names, tradenames, signs, marks and trademarks under which any business located on the Property is operated or known; (xiv) all plans and specifications prepared for construction of the Improvements on the Property and all studies, data and drawings related thereto, together with all contracts and agreements of Grantor relating to the aforesaid plans and specifications or to the

aforesaid studies, data and drawings, or to the construction of the Improvements on the Property; (xv) all of Grantor's right, title and interest in, to and under any and all reserves, deposits or escrow accounts made pursuant to the Credit Documents (as hereinafter defined), together with all income, profits, benefits and advantages arising therefrom; (xvi) all monies on deposit with Lender for the payment of real estate taxes or special assessments against the Property or for the payment of premiums on policies of fire and other hazard insurance covering the Property, together with all proceeds paid for damage done to the Property; (xvii) all rights of Grantor now or hereafter to receive utility, water and waste and sanitary sewerage services, including any tap on or access fees or payments relating thereto; and (xviii) all substitutions, accessions, additions and replacements to any of the foregoing and all products and proceeds of any of the foregoing, or with respect to the Property. The Property and all of the foregoing are hereinafter sometimes collectively called the "Premises".

**TO HAVE AND TO HOLD** the Premises to the only proper use, benefit and behoof of Lender, forever, in fee simple.

**GRANTOR WARRANTS** that Grantor has good and marketable fee simple title to the Premises, that Grantor is lawfully seized and possessed of the Premises, that Grantor has the right to convey the Premises, that the Premises are unencumbered and that Grantor shall forever warrant and defend the title to the Premises unto Lender against the claims of all persons whomsoever.

**THIS INSTRUMENT IS A DEED** passing legal title pursuant to the laws of the State of Georgia governing deeds to secure debt, and is also a security agreement granting a present and continuing security interest and security title in the portion of the Premises constituting personal property or fixtures, pursuant to the Uniform Commercial Code of the State of Georgia (O.C.G.A. §§11-9-101 et seq.) (the "UCC"), and it is not a mortgage. This Security Deed is made and intended to secure payment and performance of the following:

(i) an indebtedness of Grantor to Lender evidenced by that certain Promissory Note of even date herewith, made by Grantor and payable to the order of Lender, in the original principal amount of **One Million Eight Hundred Thousand and 00/100 Dollars ($1,800,000.00),** bearing interest and being due and payable as therein provided, with a final payment being due thereunder on **July 21, 2023,** if not sooner paid (the "Note"); (ii) any and all renewal or renewals, extension or extensions, modification or modifications thereof, and substitution or substitutions therefor, either in whole or in part; (iii) all advances, if any, made by Lender pursuant to the terms of the Note, this Security Deed and the other Credit Documents; (iv) all expenses incident to the collection of the indebtedness secured by this Security Deed; (v) all duties and obligations of Grantor under the Note, this Security Deed and the other Credit Documents; and (vi) all other indebtedness now or hereafter owing by Grantor to Lender, however or whenever created, incurred, arising or evidenced, whether direct or indirect, primary or secondary, joint or several, absolute or contingent, or due or to become due, and whether from time to time reduced and thereafter increased or entirely extinguished and thereafter reincurred, and any and all renewal or renewals, extension or extensions, modification or modifications of said indebtedness, and substitution or substitutions for said indebtedness, either in whole or in part (including without limitation all interest, fees, expenses or other charges that accrue on any of the foregoing indebtedness after the

commencement of any case or proceeding in bankruptcy by or against Grantor, whether or not allowed in such case or proceeding).

The obligations and indebtedness which this Security Deed is given to secure are hereinafter sometimes collectively called the "Secured Obligations". The term "Loan Documents" as used herein shall mean and include any and all present or future loan agreements, letter of credit agreements, lease agreements, security agreements, pledge agreements, collateral assignments, security deeds, mortgages, other security instruments, promissory notes, guaranties, subordination agreements, and any and all other agreements, instruments or documents which may now exist or may hereafter be executed by Grantor or any other Loan Party (as hereinafter defined) as evidence of or as collateral for any or all of the Secured Obligations or pursuant to which any or all of the Secured Obligations may be now or hereafter created or secured or which now or hereafter relate in any other way to the Secured Obligations. The term "Loan Party" as used herein shall mean the Grantor and any other person or entity now or hereafter liable, whether primarily, secondarily or contingently, for the payment of the Secured Obligations or any part thereof, including, without limitation, any principal maker, endorser, guarantor or surety and the heirs, legal representatives, successors and assigns thereof.

## ARTICLE I
## COVENANTS OF GRANTOR AND ASSIGNMENT OF LEASES

**Section 1.1 Encumbrances Not Permitted.** Without the prior written consent of Lender, Grantor shall not create or permit to exist any liens or encumbrances on the Premises.

**Section 1.2 Payments by Grantor.** Grantor shall pay, when due and payable: (i) the Secured Obligations in accordance with the terms and conditions of the instruments evidencing the same; (ii) all taxes, all assessments, general or special, and all other charges levied or imposed upon or assessed or placed or made against the Premises, this Security Deed, any Loan Document or the Secured Obligations or any interest of Lender in the Premises, this Security Deed, any Loan Document or the Secured Obligations; (iii) premiums on policies of fire and casualty insurance covering the Premises required by this Security Deed or now or hereafter required by Lender; (iv) premiums on all other insurance policies required by this Security Deed or now or hereafter required by Lender in connection with the Premises or the Secured Obligations or any part of either; and (v) all ground rents, lease rentals and other payments respecting the Premises payable by Grantor. Grantor shall promptly deliver to Lender, upon request by Lender, receipts showing payment in full of all of the foregoing items, other than the Secured Obligations.

**Section 1.3 Lender's Acts on Behalf of Grantor.** In the event Grantor shall either fail or refuse to pay or cause to be paid, as the same shall become due and payable, any item (including all items specified in Section 1.2 hereof) which Grantor is required to pay hereunder or which Grantor may pay to cure a default under this Security Deed, or in the event Grantor shall either fail or refuse to do or perform any act which Grantor is obligated to do or perform under this Security Deed or which Grantor may do or perform to cure a default under this Security Deed, or in the event Lender shall be required, or shall find it necessary or desirable in Lender's discretion, to defend, enforce or protect any of the rights and benefits accruing to Lender under any provision of this Security Deed, including, without limitation, Lender's interest in the Premises, insurance and condemnation proceeds and the Rents, then Lender, at Lender's option, may make such

payment or do or perform such act on behalf of Grantor, or proceed in any manner to defend, enforce or protect any such rights and benefits. All such payments made by Lender and all costs and expenses incurred by Lender in doing or performing all such acts shall be and shall become part of the Secured Obligations and shall bear interest at a per annum rate equal to two (2) percentage points in excess of the highest rate of interest then being charged with respect to any portion of the Secured Obligations from the date paid or incurred by Lender, and the interest thereon shall also be part of the Secured Obligations.

**Section 1.4** **Further Assurances.** Grantor shall at any time, and from time to time, upon request by Lender, make, execute and deliver, or cause to be made, executed and delivered, any and all other and further instruments, documents, certificates, agreements, letters, representations and other writings as may be necessary or desirable, in the opinion of Lender, in order to effectuate, complete, correct, perfect or continue and preserve the liability and obligation of Grantor for payment of the Secured Obligations and the lien, security interest and security title of Lender under this Security Deed. Grantor shall, upon request by Lender, certify in writing to Lender, or to any proposed assignee of this Security Deed, the amount of principal and interest then owing on the Secured Obligations and whether or not any setoffs or defenses exist against all or any part of the Secured Obligations.

**Section 1.5** **Rents and Leases.** Grantor shall fully and faithfully perform all of the duties and obligations of the lessor, landlord or owner of the Premises under the Leases and observe, satisfy and comply with all of the terms, covenants, conditions, agreements, requirements, restrictions and provisions of the Leases, and do all acts otherwise necessary to maintain and preserve the Rents and prevent any diminishment or impairment of the value of the Leases or the Rents or the interest of Grantor or Lender therein or thereunder. Without the prior written consent of Lender, Grantor shall not further assign the Rents or the Leases, shall not terminate, alter, modify, or amend in any respect, or accept the surrender of, any of the Leases, and shall not collect Rents for more than one (1) month in advance. Grantor shall procure and deliver to Lender upon request estoppel letters or certificates from each lessee, tenant, occupant in possession and other user of the Premises or any part thereof, as required by and in form and substance satisfactory to Lender, and shall deliver to Lender a recordable assignment of all of Grantor's interest in all Leases, which assignment shall be in form and substance satisfactory to Lender, together with proof of due service of a copy of such assignment on each lessee, tenant, occupant in possession or other user of the Premises or any part thereof.

**Section 1.6** **Maintenance and Repair.** Grantor shall maintain the Premises in good condition and repair, shall not commit or suffer any actual or threatened waste to the Premises, and shall comply with, or cause to be complied with, all statutes, ordinances, rules, regulations and directives of any governmental authority relating to the Premises or any part thereof or the use or occupancy of the Premises or any part thereof. No part of the Premises, including but not limited to any of the Improvements, shall be removed, demolished or materially altered without the prior written consent of Lender. If at any time during the continuance of the Secured Obligations any addition, alteration, change, repair, reconstruction or other work on the Premises, of any nature, structural or otherwise, becomes necessary or desirable because of damage to or destruction of the Premises or any part thereof, the entire expense thereof, regardless of when the same shall be incurred or become due, shall be the sole obligation and responsibility of Grantor, and Grantor shall pay the entire expense thereof promptly when due. Grantor shall not

initiate, join in, consent to or acquiesce in any change in any private restrictive covenant, zoning ordinance or other public or private restriction limiting or defining the use which may be made of the Premises or any part thereof.

**Section 1.7** **Insurance.** Grantor shall maintain commercial liability insurance at all times naming Lender as additional insured. Such policies shall be written by such companies, in such amounts and under such forms of policies as Lender may approve. Such policies shall insure Lender's interest in the Premises, name Lender as an insured party thereunder, provide that losses thereunder shall be payable to Lender pursuant to such forms of loss payable clauses as Lender may approve and provide that no cancellation or reduction in coverage shall be effective unless the insurer first gives Lender thirty (30) days prior written notice. The coverage amount of any such insurance shall not be less than one hundred percent (100%) of the full replacement cost of the Premises, without deduction for depreciation, and shall include satisfactory replacement cost endorsements to the underlying policy or policies. Irrespective of the insurance required and approved by Lender hereunder, the security interest of Lender hereunder shall cover all policies of insurance which insure against loss or damage to the Premises, and the proceeds from any and all such policies. Grantor shall also procure and maintain general comprehensive public liability insurance coverage with such companies, in such amounts and under such forms of policies as Lender may approve, naming Lender as an additional insured thereunder and providing that no cancellation or reduction in coverage thereunder shall be effective unless the insurer first gives Lender thirty (30) days prior written notice. Forthwith upon the issuance of all such policies, Grantor shall deliver the same to Lender together with evidence satisfactory to Lender that the premiums have been paid. Within fifteen (15) days prior to the expiration date of each such policy, Grantor shall deliver to Lender a renewal policy together with evidence satisfactory to Lender that the premium therefor has been paid. In the event of a foreclosure and sale by Lender of the Premises, the purchaser of the Premises shall succeed to all rights of Grantor in and to such policies, including the right to the refund of unearned premiums and to dividends thereunder, and Lender may, at Lender's election, assign and deliver the policies to such purchaser without any warranty or representation, express or implied, and without recourse. In the event of damage to or destruction of the Premises or any part thereof, Lender may adjust, settle or compromise claims under such policies, and the proceeds therefrom shall be paid to Lender. Lender, at Lender's option and in Lender's sole discretion, may either (i) apply the proceeds or any part thereof to payment of the Secured Obligations, in such order as Lender may determine; or (ii) require Grantor to repair, replace or reconstruct the Premises or any part thereof and disburse the proceeds to Grantor to be applied against the costs and expenses thereof as incurred or paid by Grantor, pursuant to a disbursement procedure, and under such other terms and conditions, as shall be acceptable to Lender; provided, however, that, if and for so long as no event of default hereunder has occurred and is then continuing, such proceeds shall be applied in the manner specified in clause (ii) of this sentence.

**Section 1.8** **Condemnation.** Notwithstanding any injury or damage to, or loss of, the Premises or any part thereof as a result of the exercise of the right of eminent domain, Grantor shall continue to pay the Secured Obligations. All sums paid or payable to Grantor by reason of any injury or damage to, or loss of, the Premises or any part thereof as a result of the exercise of the right of eminent domain shall be delivered to Lender and Lender, at Lender's option and at Lender's sole discretion, may either (i) apply the sum or any part thereof to payment of the Secured Obligations, in such order as Lender may determine; or (ii) require Grantor to repair,

replace or reconstruct the Premises or any part thereof and disburse such sums to Grantor to be applied against the costs and expenses thereof as incurred or paid by Grantor, pursuant to a disbursement procedure, and under such other terms and conditions, as shall be acceptable to Lender; provided, however, that, if and for so long as no event of default hereunder has occurred and is continuing, such sum shall be applied in the manner specified in clause (ii) of this sentence. In the case of damage to the Premises by fire or other casualty, Grantor shall immediately give Lender and the insurance companies that have insured against such risks written notice of such occurrence.

**Section 1.9** **Inspection.** Grantor shall permit any person designated by Lender to visit and inspect the Premises, to examine the books of account and other records of Grantor with respect to the Premises, and to discuss the affairs, finances and accounts of Grantor with and to be advised as to the same by Grantor or a knowledgeable and duly authorized representative of Grantor, all at such reasonable times and intervals as Lender may desire.

**Section 1.10** **Restriction on Transfer.** Without the prior written consent of Lender thereto (which consent may be granted or withheld at Lender's sole and absolute discretion) and the recordation of such consent in the public deed records in the Office of the Clerk of the Superior Court of the County in which the Premises or any part thereof is located, prior to the cancellation, satisfaction and release by Lender of this Security Deed, neither Grantor nor any party comprising Grantor shall grant, bargain, sell, convey, transfer, assign or exchange all or any portion of the Premises or the interest of Grantor or such other party in the Premises. The foregoing proscription shall apply to any such sale, conveyance, transfer, assignment or exchange, whether made with or without consideration, and whether arising voluntarily or involuntarily, by reason of merger, consolidation or reorganization, by operation of law, or otherwise.

**Section 1.11** **Subrogation.** Lender shall be subrogated to all right, title, equity, liens and claims of all persons to whom Lender has paid or pays money in settlement of claims, liens, encumbrances or charges or in the acquisition of any right or title for Lender's benefit under this Security Deed or for the benefit and account of Grantor.

**Section 1.12** **Flood Insurance.** Grantor represents and certifies to Lender that no part of the Premises lies within a "special flood hazard area" as defined and specified by the Federal Emergency Management Agency pursuant to the Flood Disaster Protection Act of 1973. In the event Lender determines that the rules or regulations of the Federal Reserve Board, the Comptroller of the Currency or any other governing agency licensing or regulating the operations of Lender require that flood insurance coverage be obtained for the Premises or any part thereof in order for Lender to comply with such rules or regulations or with the Flood Disaster Protection Act of 1973 as then in effect, then Grantor, upon receiving written notice from Lender of such determination: (i) shall promptly purchase and pay the premiums for such flood insurance policies as Lender deems required by such agency or agencies and so that Lender shall be deemed in compliance with the rules and regulations of such agency or agencies and with the Flood Disaster Protection Act of 1973 as then in effect; and (ii) shall deliver such policies to Lender together with evidence satisfactory to Lender that the premiums therefor have been paid. Such policies of flood insurance shall be in a form satisfactory to Lender, shall name Lender as an insured thereunder, shall provide that losses thereunder be payable to Lender pursuant to such forms of loss payable clause as Lender may approve, shall be for an amount at least equal to the Secured Obligations or

the maximum limit of coverage made available with respect to the Premises under the National Flood Insurance Act of 1968, as amended, whichever is less, and shall be noncancellable as to Lender except upon thirty (30) days prior written notice given by the insurer to Lender. Within fifteen (15) days prior to the expiration date of each such flood insurance policy, Grantor shall deliver to Lender a renewal policy or endorsement together with evidence satisfactory to Lender that the premium therefor has been paid.

**Section 1.13 Hazardous Materials.**

(a) Grantor hereby represents and warrants and covenants to and for the benefit of Lender that the Premises have not been and will not be used or operated in any manner that violated or will result in a violation of any Environmental Laws (as hereinafter defined) or resulted or will result in a Hazardous Materials Contamination (as hereinafter defined) of the Premises or any portion thereof. For purposes hereof, the term "Hazardous Materials" shall mean and refer to (i) any "hazardous waste" as defined by the Resource Conservation and Recovery Act of 1976 (42 U.S.C. § 6901 et seq.), as amended from time to time, and regulations promulgated thereunder, or as defined by the State of Georgia Hazardous Waste Management Act (O.C.G.A. § 2-8-60 et seq.), as amended from time to time, and regulations promulgated thereunder; (ii) any "hazardous substance" as defined by the Comprehensive Environmental Response, Compensation and Liability Act of 1980 (42 U.S.C. § 9601 et seq.) ("CERCLA"), as amended from time to time and regulations promulgated thereunder; (iii) asbestos; (iv) polychlorinated biphenyls; (v) any substance the presence of which on the Premises is prohibited by any federal, state or local statutes, laws, ordinances, rules, regulations, orders or decrees regulating, relating to, or imposing liability or standards of conduct concerning any hazardous, toxic or dangerous waste, substance or material, as now or hereafter in effect (collectively, "Environmental Laws") or by any other legal requirements affecting the Premises; (vi) petroleum based materials (with the exception of tires affixed to vehicles); and (vii) any other substance which is defined as hazardous, toxic, infectious, dangerous or radioactive by any Environmental Laws or by any other legal requirements affecting the Premises. The term "Hazardous Materials Contamination" shall mean and refer to the contamination of the Premises or any portion thereof, or the soil, surface water, ground water, air, or other elements on, or of, the Premises or any portion thereof, or the buildings, facilities, soil, surface water, ground water, air, or other elements on, or of, any other property, as a result of Hazardous Materials at any time emanating from, or stored, used, treated, manufactured or disposed of on, the Premises or any portion thereof.

(b) Grantor shall notify Lender promptly of any written notice or order which Grantor receives from any agency or instrumentality of the federal, or any state or local, government with respect to Grantor's potential liability for the release or threat of release of any Hazardous Materials, or compliance with any Environmental Law or Laws, and shall promptly take any and all actions necessary to bring its operations at the Premises into compliance with all Environmental Laws, and shall fully comply with the requirements of all Environmental Laws which at any time are applicable to its operations at the Premises. In connection with any legal proceedings or actions initiated with respect to environmental matters impacting the Premises, Grantor hereby agrees that Lender, at Lender's sole option, shall have the right and privilege to: (i) join in and participate in, as a party if it so elects, any one or more of such legal proceedings or actions; and (ii) have all costs and expenses incurred by Lender in connection therewith, including, without

limitation, Lender's reasonable attorneys' fees and costs paid by Grantor promptly upon demand by Lender.

(c) In addition to and without limiting the generality of any other provisions of this Security Deed, Grantor shall and hereby does protect, indemnify and hold Lender and its officers, directors, employees, shareholders, representatives and agents harmless from and against any and all losses, damages, expenses, fees, claims, demands, causes of action, judgments, costs and liabilities, including, but not limited to, reasonable attorneys' fees and costs of litigation, and costs and expenses of response, remedial and corrective work and other cleanup activities, arising out of or in any manner connected with (i) the "release" or "threatened release" (as those terms are defined in CERCLA and the rules and regulations promulgated thereunder, as from time to time amended) of any Hazardous Materials by Grantor or Grantor's employees, agents, delegees, invitees, licensees, concessionaires, contractors or representatives; (ii) an occurrence of Hazardous Materials Contamination on or about the Premises; (iii) any failure by Grantor to comply with any Environmental Law or Laws applicable to the Premises or any use thereof; or (iv) any enforcement or remedial action or any judicial or administrative action brought pursuant to any Environmental Laws, including, but not limited to, the filing of a lien against the Premises or any part thereof in favor of any governmental entity under any Environmental Laws.

(d) The indemnification provisions contained in subparagraph (c) above shall survive any payment or satisfaction of the Secured Obligations and any acquisition of the Premises by Lender pursuant to the power of sale contained in this Security Deed, by conveyance in lieu of foreclosure or otherwise, and such provisions shall remain in full force and effect as long as the possibility exists that Lender may suffer or incur any such losses, damages, expenses, fees, claims, demands, causes of action, judgments, costs and liabilities.

**Section 1.14 Intentionally Omitted.**

**Section 1.15 Lease Assignment.**

As additional security for the payment of the Note secured hereby and for the faithful performance of the terms and conditions contained herein, Grantor hereby absolutely and presently assigns to Lender all of Grantor's right, title and interest in the Leases and Rents. Grantor hereby grants to Lender the sole, exclusive and immediate right, without taking possession of the Premises, to demand, collect (by suit or otherwise), receive and give valid and sufficient receipts for any and all of said Rents, for which purpose Grantor does hereby irrevocably make, constitute and appoint Lender its attorney-in-fact with full power to appoint substitutes or a trustee to accomplish such purpose (which power of attorney shall be irrevocable so long as any portion of the Secured Obligations is outstanding, shall be deemed to be coupled with an interest, shall survive the voluntary or involuntary dissolution of Grantor and shall not be affected by any disability or incapacity suffered by Grantor subsequent to the date hereof). Lender shall be without liability for any loss which may arise from a failure or inability to collect Rents, proceeds or other payments. Nothing in this Security Deed or in any other documents relating to the loan secured hereby shall be construed to obligate Lender, expressly or by implication, to perform any of the covenants of Grantor as landlord under any of the Leases assigned to Lender or to pay any sum of money or damages therein provided to be paid by the landlord, each and all of which covenants and payments Grantor agrees to perform and pay.

Until the occurrence of a default hereunder, Grantor shall have a license to collect and receive the Rents and Profits when due and prepayments thereof for not more than one (1) month prior to the due date thereof. Upon the occurrence of a default, Grantor's license shall automatically terminate without notice to Grantor and Lender may thereafter, without taking possession of the Premises, collect the Rents itself or by an agent or receiver. From and after the termination of such license, Grantor shall be the agent of Lender in collection of the Rents and all of the Rents so collected by Grantor shall be held in trust by Grantor for the sole and exclusive benefit of Lender and Grantor shall, within one (1) business day after receipt of any Rents, pay the same to Lender to be applied by Lender as hereinafter set forth. Neither the demand for collection of Rents by Lender nor the exercise of Lender's rights as assignee of the Leases shall constitute an assumption by Lender of any obligation under any Lease or other agreement relating thereto. Grantor irrevocably agrees and consents that the respective payors of the Rents shall, upon demand and notice from Lender of a default, pay said Rents to Lender without liability to determine the actual existence of any default claimed by Lender. Grantor hereby waives any right, claim or demand which Grantor may now or hereafter have against any such payor by reason of such payment of Rents to Lender, and any such payment shall discharge such payor's obligation to make such payment to Grantor. All Rents collected or received by Lender may be applied against all expenses of collection, including, without limitation, reasonable attorneys' fees, against costs or for operation and management of the Premises, against the Secured Obligations, in whatever order or priority as to any of the items so mentioned as Lender directs in its sole subjective discretion and without regard to the adequacy of its security . Neither the exercise by Lender of any rights under this Section nor the application of any Rents to the Secured Obligations shall cure or be deemed a waiver of any default or event of default. The assignment of Leases and of Rents hereinabove granted shall continue in full force and effect during any period of foreclosure or redemption with respect to the Premises. Grantor shall not, and shall not permit any tenant to, conduct any on-site dry cleaning operations on the Premises; provided, however, a strictly drop-off and pick-up store is permitted.

## ARTICLE II
## EVENTS OF DEFAULT

Each of the following events shall constitute an event of default by Grantor hereunder:

(i) failure by Grantor to pay any of the Secured Obligations (whether principal, interest, fees or other amounts) when and as the same become due and payable (whether at maturity, on demand, or otherwise); provided that Grantor shall be entitled to receive written notice of such default and the opportunity for a period of ten (10) days after receipt of said notice to cure such default, prior to the exercise by Grantee of any remedy provided in this Security Deed, and further provided that Grantor shall be entitled to such notice and may avail itself of said cure period no more than one time in any calendar year;

(ii) any Loan Party shall: (1) become insolvent as defined in the UCC; (2) apply for or consent to the appointment of or the taking of possession by a receiver, custodian, trustee or liquidator of such Loan Party or of all or a substantial

part of the property of such Loan Party; (3) admit in writing the inability of such Loan Party, or be generally unable, to pay the debts of such Loan Party as such debts become due; (4) make a general assignment for the benefit of the creditors of such Loan Party; (5) commence a voluntary case under the Bankruptcy Code of 1978, as amended, 11 U.S.C. §§ 101 et seq. (as now or hereafter in effect, the "Bankruptcy Code"); (6) file a petition seeking to take advantage of any other law relating to bankruptcy, insolvency, reorganization, winding-up, or composition or adjustment of debts; (7) fail to controvert in a timely or appropriate manner any petition filed against such Loan Party in an involuntary case under the Bankruptcy Code; (8) acquiesce in writing to any petition filed against such Loan Party in an involuntary case under the Bankruptcy Code; or (9) take any action for the purpose of effecting any of the foregoing;

(iii) a proceeding or case shall be commenced, without the application of any Loan Party, in any court of competent jurisdiction, seeking: (1) the liquidation, reorganization, dissolution, winding-up or composition or readjustment of debts of such Loan Party; (2) the appointment of a trustee, receiver, custodian, liquidator or the like of such Loan Party or of all or any substantial part of the assets of such Loan Party; or (3) similar relief in respect of such Loan Party under any law relating to bankruptcy, insolvency, reorganization, winding-up or composition and adjustment of debts, and such proceeding or case shall continue without being dismissed, or an order, judgment or decree approving or ordering any of the foregoing shall be entered and continue in effect, for a period of sixty (60) days from commencement of such proceeding or case or the date of such order, judgment or decree, or any order for relief against such Loan Party shall be entered in an involuntary case or proceeding under the Bankruptcy Code;

(iv) any representation or warranty made by Grantor herein or by any Loan Party in any of the other Loan Documents shall be false or misleading in any material respect on the date as of which made (or deemed made);

(v) any default shall occur in the performance or observance of any term, condition or provision contained in this Security Deed and not referred to in clauses (i) through (iv) above, which default shall continue for thirty (30) days after the earlier of the date Grantor acquires knowledge thereof or Lender gives Grantor written notice thereof (except that such notice and cure period shall not apply to a default under Section 1.10 of this Security Deed); ); provided that if any such default cannot by its nature by fully cured within said thirty (30) day period, Grantor shall have a reasonable additional period to cure same provided that Grantor continuously prosecutes the curing action with diligence, and further provided that such additional period to cure shall not exceed thirty (30) days in the aggregate;

(vi) any material provision of this Security Deed or any other Loan Document shall at any time for any reason cease to be valid and binding in accordance with its terms on Grantor or any other Loan Party which executed it, or the validity, enforceability, or priority thereof shall be contested by Grantor or any

other Loan Party, or Grantor or any other Loan Party shall terminate or repudiate (or attempt to terminate or repudiate) any Loan Document executed by it;

(vii) the occurrence of an Event of Default under (and after giving effect to any notice and/or cure rights expressly provided in) any of the other Loan Documents;

(viii) If the Premises or any part thereof should be seized or levied upon under legal process or a receiver should be appointed for the Premises or any part thereof;

(ix) If any Federal tax lien or any claim of lien for labor or services performed or rendered or alleged to have been performed or rendered, or for materials supplied or furnished or alleged to have been supplied or furnished, or for architectural or engineering services performed or rendered or alleged to have been performed or rendered, in connection with the improvement of or with respect to the Premises should be filed of record against Grantor or the Premises and not be removed from record by payment or posting of bond within thirty (30) days from the date of such filing;

(x) If any claim of priority over this Security Deed should be asserted in any legal or equitable proceeding, and not be dismissed with prejudice within thirty (30) days after the filing thereof;

(xi) If any judgment should be rendered against Grantor or any other Loan Party and such judgment shall not be paid in full and satisfied or appealed from within the time period allowed for appeals and be paid in full and satisfied when it becomes final; or

(xii) Should any Loan Party, if a corporation, be liquidated or dissolved or its articles of incorporation expire or be revoked, or, if a partnership, limited liability company or business association, be dissolved or partitioned, or, if a trust, be terminated or expire.

Notwithstanding anything to the contrary contained herein, no default or event of default hereunder shall be deemed to have occurred unless notice and an opportunity to cure any such event that may result in default are afforded to Grantor as provided in Article X of that certain Loan Agreement by and between Lender and Grantor of even date herewith, and all rights of Lender under this Deed, including as set forth in Article III below, are expressly made subject to same.

## ARTICLE III
## REMEDIES AND POWER OF SALE

Upon the occurrence of an event of default, Grantor shall be in default hereunder. If Grantor shall be in default hereunder, Lender may, at its option and election and without notice to Grantor, do any one or more of the following:

**Section 3.1** **Acceleration of Secured Obligations.** Lender may immediately declare all or any portion of the Secured Obligations to be immediately due and payable, whereupon the same shall be and shall become due and payable forthwith without presentment, demand, protest or notice of any kind, all of which are expressly waived by Grantor.

**Section 3.2** **Entry and Possession.** Lender may enter upon the Premises or any part thereof and take possession thereof, excluding therefrom Grantor and all agents, employees and representatives of Grantor; employ a manager of the Premises or any part thereof; hold, store, use, operate, manage, control, maintain and lease the Premises or any part thereof; conduct business thereon; make all necessary and appropriate repairs, renewals and replacements; insure or keep the Premises insured; and carry out or enter into agreements of any kind with respect to the Premises. If Grantor shall for any reason fail to surrender or deliver the Premises or any part thereof upon demand by Lender, Lender may obtain a judgment or decree conferring upon Lender the right to immediate possession or requiring Grantor to deliver immediate possession of the Premises to Lender, and Grantor hereby specifically consents to the entry of such judgment or decree. Grantor shall pay to Lender, upon demand, all expenses of obtaining such judgment or decree, including compensation to Lender, its attorneys and agents, and all such expenses and compensation shall, until paid, become part of the Secured Indebtedness and shall be secured by this Security Deed. .

**Section 3.3** **Collection of Rents.** Lender may collect and receive all Rents, and apply the same to the Secured Obligations, after deducting therefrom all costs, charges and expenses of taking, holding, managing and operating the Premises, including the reasonable fees and expenses of Lender's attorneys and agents.

**Section 3.4** **Payments.** Lender may pay any sum or sums deemed necessary or appropriate by Lender to protect the Premises or any part thereof or Lender's interest therein.

**Section 3.5** **Other Remedies.** Lender may exercise all rights and remedies contained in any other instrument, document, agreement or other writing now or hereafter evidencing or securing the Secured Obligations or any part thereof, or heretofore, concurrently herewith or in the future executed by Grantor in favor of Lender in connection with any transaction resulting in the Secured Obligations or any part thereof, including, without limiting the generality of the foregoing, the Credit Documents.

**Section 3.6** **Appointment of Receiver.** Lender may make application to any court and be entitled to the appointment of a receiver to take charge of the Premises or any part thereof without alleging or proving, or having any consideration given to, the insolvency of Grantor, the value of the Premises as security for the Secured Obligations or any other matter usually incident to the appointment of a receiver. Further, such receiver shall, to the extent authorized by the court appointing the receiver or applicable law, have: (i) the power to collect the rents, issues and profits of the Premises during the pendency of any foreclosure proceedings, whether by judicial or non-judicial foreclosure, and, in case of a sale and a deficiency, for such time when Grantor, except for the intervention of such receiver, would be entitled to collect such rents, issues and profits, to the maximum time and extent permitted by law; (ii) the power to extend or modify any then existing Leases and to make new leases, which extensions, modifications and new leases may provide for terms to expire, or for options to leases to extend

or renew terms to expire, beyond the maturity date of the Note and beyond the date of the issuance of a deed or deeds to a purchaser or purchasers at a foreclosure sale, it being understood and agreed that any such leases, and the options or other such provisions to be contained therein, shall be binding upon Grantor and all persons whose interests in the Premises are subject to the lien and security title hereof and upon the purchaser or purchasers at any foreclosure sale, notwithstanding any redemption from sale, discharge of the Secured Obligations, satisfaction of any foreclosure decree, or issuance of any certificate of sale or deed to any purchaser; and (iii) all other powers which may be necessary or are usual in such case for the protection, possession, control, management, and operation of the Premises during the whole of said period. The court from time to time may authorize the receiver to apply the net income in the receiver's hands in payment in whole or in part of: (i) the Secured Obligations hereunder, or by any decree foreclosing this Security Deed, or in accordance with applicable non-judicial foreclosure provisions, any tax, special assessment or other lien which may be or become superior to the lien and security title hereof or of such decree; and (ii) if this Security Deed covers a leasehold estate, all rents due or which may become due under the underlying lease or ground lease.

**Section 3.7** **UCC Remedies.** With respect to the personal property and fixtures in which a security interest is herein granted, at Lender's option, Lender may exercise any or all of the rights accruing to a secured party under this instrument, the UCC and any other applicable law. Grantor shall, if Lender requests, assemble all such personal property and make it available to Lender at a place or places, to be designated by Lender, which shall be reasonably convenient to Grantor and Lender. Any notice required to be given by Lender of a public or private sale, lease or other disposition of the personal property or any other intended action by Lender may be personally delivered to Grantor or may be deposited in the United States mail with postage prepaid duly addressed to Grantor at the address shown in the paragraph herein captioned "Notices", or at any other address theretofore designated by Grantor in writing to Lender, at least five (5) business days prior to such proposed action, and shall constitute reasonable and fair notice to Grantor of any such action.

**Section 3.8** **Foreclosure.** Lender, at its option, may sell, and is hereby authorized and empowered to foreclose this Security Deed, at Lender's option, by judicial or nonjudicial foreclosure in accordance with Georgia law, for the entire unpaid amount of the Secured Obligations, or only as to the sum past due, with interest and costs without injury to this Security Deed or the displacement or impairment of the remainder of the lien and security title thereof, and at such foreclosure sale the Premises shall be sold subject to all remaining items of the Secured Obligations and Lender may again foreclose, in the same manner, as often as there may be any sum past due. In case of sale in any action or proceeding to foreclose this Security Deed, Lender shall have the right to sell the Premises covered hereby in parts or as an entirety. It is intended hereby to give to Lender the widest possible discretion permitted by law with respect to all aspects of any such sale or sales.

**Section 3.9** **Power of Sale.** Lender may sell the Premises, or any part or parcel thereof or any interest of Grantor therein separately, at Lender's discretion, with or without taking possession thereof, at a public sale or public sales before the Courthouse door of the County in which the Premises or any part thereof is located, to the highest bidder for cash, after first giving notice of the time, place and terms of such sale or sales by advertisement published once a week for four weeks (without any regard for the number of days between the date the first such notice is

published and the date on which any such sale commences) in the newspaper in which advertisements of sheriff's sales are published in such county. Such advertisement so published shall be notice to Grantor, and Grantor hereby expressly waives all other notices. Lender may bid and purchase at any such sale and shall be entitled to apply all or any portion of the Secured Obligations as a credit to the purchase price, and Lender, as agent and attorney-in-fact for Grantor and in Grantor's name, may execute and deliver to the purchaser or purchasers at any such sale a sufficient conveyance of the Premises, or the part or parcel thereof or the interest therein which is sold. Lender's conveyance may contain recitals as to the occurrence of any event of default under this Security Deed, and such recitals shall be presumptive evidence that all preliminary acts prerequisite to any such sale and conveyance were in all respects duly complied with. The recitals made by Lender shall be binding and conclusive upon Grantor, and the sale and conveyance made by Lender shall divest Grantor of all right, title, interest and equity that Grantor may have or have had in, to and under the Premises, or the part or parcel thereof or the interest therein which is sold, and shall vest the same in the purchaser or purchasers at such sale or sales. Lender may hold one or more sales hereunder until the Secured Obligations has been satisfied in full. Grantor hereby constitutes and appoints Lender as Grantor's agent and attorney-in-fact to make such sale or sales, to execute and deliver such conveyance or conveyances, and to make such recitals, and Grantor hereby ratifies and confirms all of the acts and doings of Lender as Grantor's agent and attorney-in-fact hereunder. Lender's agency and power as attorney-in-fact hereunder are coupled with an interest, cannot be revoked by bankruptcy, insolvency, incompetency, death, dissolution or otherwise, and shall not be exhausted until the Secured Obligations have been satisfied in full. The proceeds of each sale by Lender hereunder shall be applied first to the costs and expenses of the sale and of all proceedings in connection therewith, including, without limitation, the fees and expenses of Lender's attorneys in connection therewith, then to the payment of the balance of the Secured Obligations in such manner and in such order as Lender shall determine in its sole and absolute discretion, and the remainder, if any, shall be paid to Grantor or to the parties entitled thereto by law. If the proceeds of any sale are not sufficient to pay the Secured Obligations in full, Lender shall determine, at Lender's option and in Lender's discretion, the portions of the Secured Obligations to which the proceeds (after deducting therefrom the costs and expenses of the sale and all proceedings in connection therewith) shall be applied and in what order the proceeds shall be so applied. Grantor covenants and agrees that, in the event of any sale pursuant to the agency and power herein granted, Grantor shall be and become a tenant holding over and shall deliver possession of the Premises, or the part thereof or interest therein sold, to the purchaser or purchasers at the sale or be summarily dispossessed in accordance with the provisions of law applicable to tenants holding over.

All of the foregoing rights and remedies are cumulative of and in addition to, and not restrictive of or in lieu of, any right or remedy provided for by statute, or now or hereafter existing at law or in equity. Lender may, at Lender's election and at Lender's sole discretion, exercise each and every such right and remedy concurrently or separately or in any combination.

**Section 3.10** **<u>Lender's Performance of Defaulted Acts</u>.** Upon the occurrence of an event of default herein, Lender may, but need not, and whether electing to declare the whole of the Secured Obligations due and payable or not, and without waiver of any other remedy, make any payment or perform any act herein required of Grantor in any form and manner deemed expedient, and may, but need not, make full or partial payments of principal or interest on prior encumbrances, if any, and purchase, discharge, compromise or settle any tax

lien or other prior lien or title or claim thereof, or redeem from any tax sale or forfeiture affecting the Premises or contest any tax or assessment or cure any default of Grantor as landlord in any Lease. All monies paid for any of the purposes herein authorized and all reasonable expenses paid or incurred in connection therewith, including reasonable attorneys' fees, and any other monies advanced by Lender to protect the Premises or the lien and security title hereof, shall be additional indebtedness and a part of the Secured Obligations, and shall become immediately due and payable without notice and with interest thereon at the Default Rate of interest set forth in the Note. No inaction of Lender shall ever be considered as a waiver of any right accruing to it on account of any event of default on the part of Grantor.

## ARTICLE IV
## ADDITIONAL PROVISIONS

The following terms and conditions shall constitute additional covenants and agreements by Grantor:

**Section 4.1 Non-Residential Status of Premises.** Grantor represents and warrants to Lender that neither all of the Premises nor any part thereof is to be used as a dwelling place by Grantor at the time this Security Deed is entered into and, accordingly, the notice requirements of O.C.G.A. § 44-14-162.2 shall not be applicable to any exercise of the power of sale contained in this Security Deed.

**Section 4.2 Commercial Transaction.** The interest of Lender under this Security Deed and the liability and obligation of Grantor for the payment of the Secured Obligations arise from a "commercial transaction" within the meaning of O.C.G.A. § 44-14-260(1). Accordingly, pursuant to O.C.G.A. § 44-14-263, Grantor waives any and all rights which Grantor may have to notice prior to seizure by Lender of any interest in personal property of Grantor which constitutes part of the Premises, whether such seizure is by writ of possession or otherwise.

**Section 4.3 Applicable Law.** This agreement shall be governed by, construed under and interpreted and enforced in accordance with the laws (excluding conflict of laws rules) of the State of Georgia.

**Section 4.4 No Waiver; Modifications in Writing.** Lender shall not be deemed to waive any of Lender's rights or remedies under this Security Deed, unless such waiver is expressly stated in writing and signed by or on behalf of Lender. No delay, omission or forbearance by Lender in exercising any of Lender's rights or remedies shall operate as a waiver of such rights or remedies. A waiver in writing on one occasion shall not be construed as a waiver of any right or any remedy on any future occasion. The remedies provided herein are cumulative and are not exclusive of any remedies that may be available to any party at law or in equity or otherwise. No amendment, modification, supplement, termination or waiver of or to any provision of this Security Deed, nor consent to any departure therefrom, shall be effective unless the same shall be in writing and signed by or on behalf of the party to be charged with the enforcement thereof. Any amendment, modification or supplement of or to any provision of this Security Deed, any waiver of any provision of this Security Deed, and any consent to any

departure from the terms of any provision of this Security Deed, shall be effective only in the specific instance and for the specific purpose for which it was made or given.

**Section 4.5** **Time.** Time is and shall be of the essence of this Security Deed and the covenants and agreements by Grantor.

**Section 4.6** **Captions.** Any captions or headings preceding the text of separate sections, paragraphs and subparagraphs hereof are solely for reference purposes and shall not affect the meaning, construction, interpretation or effect of the text.

**Section 4.7** **Notices.** All notices, requests and other communications hereunder shall be in electronic, telephonic (confirmed in writing) or written form and shall be given to the party to whom sent, addressed to such person at its address set forth above. Each such notice, request or communication shall be effective: (i) if given by telecopy, when such communication is transmitted to the telecopy number from time to time designated by the party receiving such notice in writing (any such notice, request or communication sent by telecopy shall be confirmed promptly thereafter by personal delivery or mailing in accordance with the other provisions of this Section, but such confirmation requirement shall not affect the date on which such telecopy shall be deemed to be effective for purposes hereof); (ii) if given by mail, three (3) business days after such communication is deposited in the United States mail with first class postage prepaid, return receipt requested, addressed as aforesaid; (iii) if sent for overnight delivery by Federal Express or other reputable national overnight delivery service, one (1) business day after such communication is entrusted to such service for overnight delivery and with recipient signature required, addressed as aforesaid; or (iv) if given by any other means, when delivered at the address of the party to whom such notice is being delivered. Either party may, by written notice to the other, designate a different address for receiving notices hereunder; provided, however, that no change in Grantor's address for receiving notices hereunder shall be effective until Lender has actually received notice thereof.

**Section 4.8** **Severability.** Wherever possible, each provision of this Security Deed shall be interpreted in such manner as to be effective and valid under applicable law, but if any provision of this Security Deed shall be prohibited by or invalid under applicable law, such provision shall be ineffective only to the extent of such prohibition or invalidity, without invalidating the remainder of such provision or the remaining provisions of this Security Deed.

**Section 4.9** **Definitions.** The word "Grantor" as used herein shall include the legal representatives, successors and assigns of Grantor as if so specified at length throughout this Security Deed, and all covenants, agreements, duties, obligations, liabilities and responsibilities of Grantor shall be binding upon and enforceable against the legal representatives, successors and assigns of Grantor. The word "Grantor" as used herein shall also include all parties executing this Security Deed as Grantor, and each of them, who shall be jointly and severally liable under this Security Deed, should more than one Grantor execute this Security Deed; and shall include the masculine and feminine genders, regardless of the sex of Grantor or any of them, and shall include partnerships, corporations and other legal entities. The word "Lender" as used herein shall include the transferees, successors, legal representatives and assigns of Lender as if so specified at length throughout this Security Deed, and all rights of Lender under this Security Deed shall inure to the benefit of the transferees, successors, legal representatives and assigns of Lender.

**Section 4.10** **Security Agreement.** Grantor and Lender agree that this Security Deed shall constitute a security agreement within the meaning of the UCC with respect to all sums on deposit with Lender with respect to insurance proceeds or condemnation proceeds and all other sums of Grantor or any guarantor on deposit with Lender (the "Deposits") and with respect to any personal property and fixtures included in the definition herein of the word "Premises", which property may not be deemed to form a part of the real estate described in Exhibit A or may not constitute a "fixture" within the meaning of the UCC, and all replacements of such property, substitutions and additions thereto and the proceeds thereof, all such property being sometimes hereinafter collectively referred to as the "Collateral", and that a security interest in and to the Collateral and the Deposits is hereby granted to Lender and the Deposits and all of Grantor's right, title and interest therein are hereby assigned to Lender, all to secure payment of the Secured Obligations and to secure performance by Grantor of the terms, covenants and provisions hereof. Upon the occurrence of an event of default under this Security Deed, Lender, pursuant to the appropriate provisions of the UCC, shall have the option of proceeding with respect to the Collateral in accordance with its rights and remedies with respect to the real property, in which event the default provisions of the UCC shall not apply. All disposition of the Collateral may be conducted by an employee or agent of Lender. Any person, including both Grantor and Lender, shall be eligible to purchase any part or all of the Collateral at any such disposition. Lender shall have the right to enter upon the Property and the Improvements or any real property where any of the property which is the subject of the security interest granted herein is located to take possession of, assemble and collect the same or to render it unusable, or Grantor, upon demand of Lender, shall assemble such property and make it available to Lender at the Property or the Improvements, or at a place designated by Lender. The parties agree that, in the event Lender shall elect to proceed with respect to the Collateral separately from the real property, ten (10) days' notice of the sale of the Collateral shall be reasonable notice. No such notice is necessary for any such property which is perishable, threatens to decline speedily in value or is of a type customarily sold on a recognized market. In the event of a foreclosure sale, the Collateral may, at the option of Lender, be sold as a whole or in parts, as determined by Lender in its sole discretion. It shall not be necessary that Lender take possession of the aforementioned Collateral, or any part thereof, prior to the time that any sale pursuant to the provisions of this Section is conducted and it shall not be necessary that said Collateral, or any part thereof, be present at the location of such sale. Grantor may appoint or delegate any one or more persons as agent to perform any act or acts necessary or incident to any sale held by Lender, including the sending of notices and the conduct of the sale, but in the name and on behalf of Lender. The reasonable expenses of retaking, holding, preparing for sale, selling and the like incurred by Lender shall include, but not be limited to, reasonable attorneys' fees and legal expenses incurred by Lender. Grantor agrees that, without the written consent of Lender, Grantor will not remove or permit to be removed from the Premises any of the Collateral except that so long as the Grantor is not in default hereunder, Grantor shall be permitted to sell or otherwise dispose of the Collateral, when obsolete, worn out, inadequate, unserviceable or unnecessary for use in the operation of the Premises, upon replacing the same or substituting for the same other Collateral at least equal in function, quality and utility to the initial function, quality and utility to that disposed of and in such a manner so that said Collateral shall be subject to the security interest created hereby, and so that the security interest of Lender shall be first in priority, it being expressly understood and agreed that all replacements of the Collateral and any additions to the Collateral shall be and become immediately subject to the security interest of this

Security Deed and covered hereby. Grantor shall, from time to time, on request of Lender, deliver to Lender an inventory of the Collateral in reasonable detail. Grantor covenants and represents that all Collateral, and all replacements thereof, substitutions therefor or additions thereto, unless Lender otherwise consents, now are and will be free and clear of liens (other than the lien of taxes not yet due or payable), encumbrances or security interests of others. Grantor here by agrees to execute and deliver on demand to Lender and hereby irrevocably constitutes and appoints Lender the attorney-in-fact of Grantor to execute and deliver and, if appropriate, to file with the appropriate filing officer or office such security agreements, financing statements and other documents in form satisfactory to Lender, and Grantor will do all such acts and things as Lender may at anytime, or from time to time, reasonably request or as may be necessary or appropriate to establish and maintain a first perfected security interest in the Deposits and Collateral, subject to no liens (other than the lien of taxes not yet due or payable), encumbrances, or security interests of others. Grantor hereby authorizes Lender at any time and from time to time to file any initial financing statements, amendments thereto and continuation statements with or without the signature of Grantor as authorized by applicable law, as applicable to all or part of the Collateral. For purposes of such filings, Grantor agrees to furnish any information requested by Lender promptly upon request therefor by Lender. Grantor also ratifies its authorization for Lender to have filed any like initial financing statements, amendments thereto or continuation statements, if filed prior to this Security Deed. Except with respect to Rents to the extent specifically provided herein to the contrary, Lender shall have the right of possession of all cash, securities, instruments, negotiable instruments, documents, certificates and any other evidences of cash or other property or evidences of rights to cash rather than property, which are now or hereafter a part of the Premises and Grantor shall promptly deliver the same to Lender, endorsed to Lender, without further notice from Lender. Grantor agrees to furnish Lender with notice of any change in name, identity, organizational structure, residence, state of incorporation, state of organization or state of formation or principal place of business or mailing address of Grantor within ten (10) days of the effective date of any such change.

The name and address of the Grantor (as debtor under the UCC) and Lender (as secured party under the UCC) are as set forth below:

| | |
|---|---|
| Name of Debtor: | Butts 1177, LLC |
| Debtor's Mailing Address: | 120 S. Zack Hinton Parkway<br>McDonough, Georgia 30253 |
| Address of Premises: | Approximately 1177<br>Butts County, Georgia |
| Name of Secured Party:<br>Address of Secured Party: | JDS Holdings, LLC<br>6224 Sugarloaf Parkway, Suite 160<br>Duluth, Georgia 30097 |

This financing statement covers the Collateral. Some of the items or types of property comprising the Collateral are or are to become fixtures on the real property described in this Security Deed. Grantor is the record owner of the real property described herein upon which the foregoing fixtures and other items and types of property are located.

**Section 4.11 ERISA.** Grantor hereby represents, warrants and agrees that it is acting on its own behalf and it is not an employee benefit plan (within the meaning of Section 3 of the Employee Retirement Income Security Act of 1974, as amended ("ERISA")) which is subject to Title 1 of ERISA, nor a plan as defined in Section 4975(e)(1) of the Internal Revenue Code of 1986, as amended, notwithstanding the status of the ownership of any membership, general or limited partnership, shareholder or other beneficial interests in Grantor. Grantor represents, warrants and agrees that it is, and shall be during the entire term of the Loan, an "operating company" as defined in Department of Labor Regulation Section 2510.3-101(c).

**Section 4.12 General Indemnification.**

To the fullest extent permitted by law and except to the extent caused by the gross negligence or willful misconduct of the Indemnified Parties (as hereinafter defined), Grantor shall, at its sole cost and expense, protect, defend, indemnify, release and hold harmless the Indemnified Parties from and against any and all Losses (as hereinafter defined) imposed upon or incurred by or asserted against any Indemnified Parties and directly or indirectly arising out of or in any way relating to any one or more of the following: (i) any accident, injury to or death of persons or loss of or damage to property occurring in, on or about the Premises or any part thereof or on the adjoining sidewalks, curbs, adjacent property or adjacent parking areas, streets or ways; (ii) any use, nonuse or condition in, on or about the Premises or any part thereof or on the adjoining sidewalks, curbs, adjacent property or adjacent parking areas, streets or ways; (iii) performance of any labor or services or the furnishing of any materials or other property in respect of the Premises or any part thereof; (iv) any failure of the Premises to be in compliance with any applicable laws; (v) any and all claims, demands or undertakings on its part to perform or discharge any of the terms, covenants, or agreements contained in any Lease; or (vi) the payment of any commission, charge or brokerage fee to anyone which may be payable in connection with the funding of the loan evidenced by the Note and secured by this Security Deed. Any amounts payable to Lender by reason of the application of this Section 4.12 shall become immediately due and payable and shall bear interest at the Default Rate from the date which is ten (10) days after written demand to Grantor for payment of such loss or damage is made, until paid. The term "Losses" shall mean any and all claims, suits, liabilities (including, without limitation, strict liabilities), actions, proceedings, obligations, debts, damages, losses, costs, expenses, fines, penalties, charges, fees, judgments, awards and amounts paid in settlement of whatever kind or nature (including but not limited to attorneys' fees and other costs of defense). The term "Indemnified Parties" shall mean: (a) Lender; (b) any prior owner or holder of the Note; (c) any servicer or prior servicer of the loan; (d) any participant or any prior participant in any portion of the loan; (e) any trustees, custodians or other fiduciaries who hold or who have held a full or partial interest in the loan for the benefit of any participant; (f) any receiver or other fiduciary appointed in a foreclosure or other collection proceeding; (g) any officers, directors, shareholders, partners, members, employees, agents, servants, representatives, contractors, subcontractors, affiliates or subsidiaries of any and all of the foregoing; and (h) the heirs, legal representatives, successors and assigns of any and all of the foregoing, including, without limitation, any successors by merger, consolidation or acquisition of all or a substantial portion of the Indemnified Parties' assets and business, in all cases whether during the term of the loan or as part of or following a foreclosure of the loan.

Upon written request by any Indemnified Party, Grantor shall defend such Indemnified Party (if requested by any Indemnified Party, in the name of the Indemnified Party) by attorneys and other professionals approved by the Indemnified Parties. Notwithstanding the foregoing, any Indemnified Parties may, in their sole discretion, engage their own attorneys and other professionals to defend or assist them, and, at the option of the Indemnified Parties, their attorneys shall control the resolution of any claim or proceeding. Upon demand, Grantor shall pay or, in the sole discretion of the Indemnified Parties, reimburse, the Indemnified Parties for the payment of reasonable fees and disbursements of attorneys, engineers, environmental consultants, laboratories and other professionals in connection therewith.

**Section 4.13** **WAIVERS.** GRANTOR HEREBY EXPRESSLY WAIVES ANY RIGHT GRANTOR MAY HAVE UNDER THE CONSTITUTION OF THE STATE OF GEORGIA OR THE CONSTITUTION OF THE UNITED STATES OF AMERICA TO NOTICE OR TO A JUDICIAL HEARING PRIOR TO THE EXERCISE OF ANY RIGHT OR REMEDY PROVIDED TO LENDER BY THIS SECURITY DEED, AND WAIVES GRANTOR'S RIGHTS, IF ANY, TO SET ASIDE OR INVALIDATE ANY SALE UNDER POWER DULY CONSUMMATED IN ACCORDANCE WITH THE PROVISIONS OF THIS SECURITY DEED ON THE GROUND (IF SUCH BE THE CASE) THAT THE SALE WAS CONSUMMATED WITHOUT PRIOR NOTICE OR JUDICIAL HEARING OR BOTH. GRANTOR FURTHER HEREBY EXPRESSLY WAIVES ALL HOMESTEAD EXEMPTION RIGHTS, IF ANY, WHICH GRANTOR OR GRANTOR'S FAMILY MAY HAVE PURSUANT TO THE CONSTITUTION OF THE UNITED STATES, THE STATE OF GEORGIA OR ANY OTHER STATE OF THE UNITED STATES, IN AND TO THE PREMISES AS AGAINST THE COLLECTION OF THE SECURED OBLIGATIONS, OR ANY PART THEREOF. ALL WAIVERS BY GRANTOR IN THIS PARAGRAPH HAVE BEEN MADE VOLUNTARILY, INTELLIGENTLY AND KNOWINGLY BY GRANTOR, AFTER GRANTOR HAS BEEN AFFORDED AN OPPORTUNITY TO BE INFORMED BY COUNSEL OF GRANTOR'S CHOICE AS TO POSSIBLE ALTERNATIVE RIGHTS. GRANTOR'S EXECUTION OF THIS SECURITY DEED SHALL BE CONCLUSIVE EVIDENCE OF THE WAIVER AND THAT SUCH WAIVER HAS BEEN VOLUNTARILY, INTELLIGENTLY AND KNOWINGLY MADE.

This conveyance is made subject to Security Deed from Grantor to JDS Holdings, LLC and William Stacey Britt dated May 22, 2023, filed for record May 24, 2023 and recorded in Deed Book 992, Page 157, Butt County, Georgia records. It is agreed that any default thereunder may at the option of the Grantee herein or its successors in title be declared and deemed to be a default under the terms of the within instrument. The Grantor hereby assigns and authorizes payment to the Grantee herein or its successors in title of any surplus funds arising from foreclosure of any of said security deeds.

[Remainder of page intentionally left blank]

**IN WITNESS WHEREOF**, Grantor has executed and delivered this Security Deed, and has affixed its seal hereto, all as of the day and year first written above.

GRANTOR:

Signed, sealed and delivered in the presence of:

**BUTTS 1177, LLC,**
a Georgia limited liability company

]By: ______________________(SEAL)
Jeffery R. Grant, Manager

______________________
Unofficial Witness

______________________
Notary Public
My Commission Expires:

[NOTARY SEAL]

RICHARD W. SCHMIDT
Notary Public, Georgia
Morgan County
My Commission Expires
June 11, 2027

**EXHIBIT A TO**
**DEED TO SECURE DEBT AND SECURITY AGREEMENT**
**PROPERTY DESCRIPTION**

**Parcel 1:**

All that certain tract or parcel of land lying and being in Land Lots 2 and 3 of the 14th Land District and Land Lots 27, 28, 30, 31, 32, 58 and 59 of the 4th Land District in Butts County Georgia, containing 990.4 gross acres (985.1 net acres plus 4.3 acres in R/W) and being shown on plat of survey prepared by Byron L. Farmer, R.L.S. No. 1679, dated December, 1978, and recorded in Plat Book 6, Page 176, Clerk's Office, Butts Superior Court, which plat and the record thereof are incorporated herein by reference thereto, said lands being more particularly described as follows: for point of beginning commence at the point shown as point #1 on the above mentioned plat located on the centerline of an unimproved county road (iron pin 15 feet back); thence 58°10'W, 208.5 feet to an axel; thence S7°38'W, 583.5 feet to an iron pin; thence S53°50'W 772.4 feet to an iron pin; thence S73°55'E, 263.8 feet to a point; thence S57°39'E, 228.0 feet to a point; thence S25°24'E, 647.0 feet to a point; thence S32°20'E, 269.7 feet to a point; thence S72°51'E, 468.0 feet to a point on the centerline of Big Sandy Creek; thence along the centerline of Big Sandy Creek the following degrees and distances S49°55' E, 215.3 feet; S15°12'E, 184.7 feet; S32°44'E, 635.8 feet; N89°10'E, 150.0 feet; S57°00'E, 341.3 feet; N47°56'E, 108.6 feet; S81°59'E, 217.0 feet; N80°41'E, 255.6 feet; N89°46'E, 322.5 feet; N79°11'E, 185.2 feet to a point (iron pin 55 feet back on line); thence S88°43'E, 470.5 feet to an iron pin located at the common corner of Land Lot Numbers 28, 29, 30 and 31, thence S79°32'E, 598.7 feet to a point; thence S87°21'E, 709.4 feet to an iron pin; thence S79°09'E, 598.7 feet to a point; thence S87°21'E, 709.4 feet to an iron pin; thence S79°09'E, 163.9 feet to a point; thence S87°24'E, 1208.7 feet to a point; thence N21°35'E, 374.4 feet to an 18 inch Gum Tree; thence N17°59'E, 536.8 feet to a 10 inch Pine tree; thence S89°31'E, 1464.3 feet to an iron pin; thence E4°17'W, 573.5 feet to a 24 inch Sweet Gum Tree; thence S47°13'S 242.8 feet to a 24 inch Pine tree; thence S2°20'W, 2753.7 feet to a 36 inch dead Pine tree; thence N58°24'W, 1452.4 feet to an iron pin; thence S6°33'W, 630.1 feet to an iron pin; thence N83°54'E, 83.0 feet to a point on the centerline of Big Sandy Creek (iron pin 15 feet back on bank), thence N1°15'W, 1834.8 feet to an iron pin; thence N87°11'W, 353.4 feet to the centerline of an ingress and egress road; thence along the centerline of said ingress and egress road; thence along the centerline of said ingress and egress road the following degrees and distances, N26°50'W, 271.7 feet; N9°01'W, 170.4 feet; N22°10'W, 418.2 feet; N18°24'W, 500.1 feet to a point (iron pin 40 feet back on line); thence N17°25'E, 2037.6 feet to an iron pin; thence N25°24'E, 467.5 feet to a point; thence N6°13'E, 422.8 feet to a point on the centerline of an unimproved county road (iron pin 38 feet back) located approximately 0.2 miles east of State Hwy. No. 42; thence along the centerline of said unimproved county road the following degrees and distances S88°00'E, 252.9 feet; N75°31'E, 105.0 feet; N51°30'E, 113.9 feet; N44°31'E, 355.5 feet; N54°09'E, 196.2 feet; N67°22'E, 107.0 feet; N82°51'E, 108.3 feet; S81°06'E, 380.3 feet; S86°04'E, 413.5 feet; S67°05'E, 295.0 feet; S56°37'E, 173.9 feet to the point of beginning.

**Form 12.11**

**Parcel 2:**

All that tract or parcel of land lying and being in the 609th District, G.M., Butts County, Georgia, on the west side of State Highway No. 87 about 1.1 miles South of the limits of the Town of Flovilla, consisting of 187.1 acres, more or less, fronting East on said highway and more particularly described as follows:

Beginning at a point on the West side of said highway on the North-South dividing line of Land Lots 30 and 31 adjacent to the West boundary of said highway; thence from said point of beginning S89°30'W, 675 feet to a point; thence S0°30'E, 2978 feet to a point, which point is a large Pine Tree; thence S89°30'W, 1515 feet along a fence row to a point which point is a large Pine Tree; Thence N0°30'W, 2802 feet along a fence row to a point; thence N50°E, 250 feet to a point; thence N0°30'W, 580 feet along a fence row to a point; thence S89°30'W, 1450 feet along a fence row to a point; which point is a large Pine Tree, thence N26°S, 1050 feet to an iron pin; thence N89°30', 2260 feet to a point on the West boundary of said state Highway No. 87; thence S24°E, 1665 feet along the west boundary line of State Highway No. 87 to a point; which is the point of beginning.